Plaintiff's deposition excerpts

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:   GUERIVACE SHELTON                              2/29/2012

1

```
 1               IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
 2                        DALLAS DIVISION
 3
       GUERIVACE SHELTON,           )
 4          Plaintiff,             )
                                    )
 5     VS.                          )   CASE NO.
                                    )   3:11-CV-00991-K-WB
 6     AT&T MOBILITY, LLC,          )
       and COMMUNICATIONS           )
 7     WORKERS OF AMERICA,          )
       LOCAL 6215,                  )
 8          Defendants.            )
 9
               ****************************************
10                      ORAL DEPOSITION OF
11                      GUERIVACE SHELTON
12                      February 29, 2012
13                         VOLUME 1
14             ****************************************
15             ANSWERS AND DEPOSITION OF GUERIVACE
16     SHELTON, produced as a witness at the instance of the
17     Defendant AT&T MOBILITY, LLC, taken in the above-styled
18     and -numbered cause on the 29th day of February, 2012,
19     from 9:25 a.m. to 4:39 p.m., before Jamie K. Israelow, a
20     Certified Shorthand Reporter in and for the State of
21     Texas, Registered Professional Reporter, Certified
22     Realtime Reporter and Certified LiveNote Reporter,
23     reported in machine shorthand at the offices of AT&T,
24     located at 208 S. Akard Street, 13th Floor, in the City
25     of Dallas, County of Dallas and State of Texas.
```

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:   GUERIVACE SHELTON                    2/29/2012

11

| | | |
|---|---|---|
| 09:30:33 | 1 | Q.   Okay.  Let me cover now your work history |
| 09:30:38 | 2 | since -- since you graduated high school. |
| 09:30:47 | 3 | A.   Oh. |
| 09:30:48 | 4 | Q.   I'm sorry.  I didn't inflect my voice -- |
| 09:30:49 | 5 | A.   You said:  Let me cover it.  I -- |
| 09:30:51 | 6 | Q.   I didn't inflect my voice properly.  Let me ask |
| 09:30:54 | 7 | it again.  I'm sorry. |
| 09:30:57 | 8 | A.   Okay. |
| 09:30:57 | 9 | Q.   You've obviously worked since graduating high |
| 09:30:59 | 10 | school. |
| 09:30:59 | 11 | A.   Yes. |
| 09:30:59 | 12 | Q.   And when did you graduate high school? |
| 09:31:00 | 13 | A.   19 -- high school was '77, I guess. |
| 09:31:06 | 14 | Q.   Okay.  And I can tell you I -- I swear I don't |
| 09:31:10 | 15 | usually ask women this question, but how -- how young a |
| 09:31:14 | 16 | lady are you today? |
| 09:31:15 | 17 | A.   I'm 54. |
| 09:31:24 | 18 | Q.   All right.  Let's go back to 1977.  We all have |
| 09:31:30 | 19 | to test our memories a bit.  Can you give me your -- |
| 09:31:37 | 20 | your different jobs that you've worked in since then? |
| 09:31:41 | 21 | And again, I don't have to have exact dates, even exact |
| 09:31:41 | 22 | names, but just tell me what you did and where you did |
| 09:31:45 | 23 | it. |
| 09:31:45 | 24 | A.   When I was in high school, I worked for a place |
| 09:31:48 | 25 | called Watson's Department Store. |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

26

09:49:08    1            The lady that was sitting beside me was

09:49:12    2    one of the younger women, which was Leticia Beckworth,

09:49:16    3    and my manager came down the aisles giving us the papers

09:49:20    4    that we needed to sign to, you know, set us in our pay

09:49:29    5    scales and see if that's what you agreed on.  And that's

09:49:31    6    how -- you know, she handed her my paper to reach to me.

09:49:39    7    On the way through, she looked at my paper.

09:49:41    8        Q.   Uh-huh.  Ms. Beckworth did?

09:49:44    9        A.   Yes.

09:49:44   10        Q.   Okay.

09:49:45   11        A.   And so that's, you know, some of it.  And then

09:49:47   12    some of the other agents found out, I guess, between the

09:49:50   13    others talking about it.

09:49:56   14        Q.   Was Ms. Beckworth -- was she younger than you?

09:49:58   15        A.   Yes.

09:49:59   16        Q.   Do you know how young or how old she is or was?

09:50:02   17    Any idea?

09:50:02   18        A.   Not exactly, no.

09:50:04   19        Q.   So you don't know, for instance, if in 2000 --

09:50:06   20    well, when did you find out?  You said this was back

09:50:08   21    in --

09:50:08   22        A.   2008.

09:50:09   23        Q.   -- 2008.  You started September 2008, so it had

09:50:16   24    to be September, October, November, December, somewhere

09:50:19   25    in the last quarter or so of 2008.

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

27

09:50:21  1        A.    Yeah.

09:50:22  2        Q.    How did you find out that Ms. Beckworth had a

09:50:27  3    higher starting salary or starting wages than you?

09:50:32  4        A.    At that time, I didn't know.  I wasn't sure.

09:50:37  5    When I came into the company, that was the argument.

09:50:40  6    And then later on, people were continuing to argue about

09:50:44  7    the situation.

09:50:48  8             In December of 2008, I heard Ms. Beckworth

09:50:55  9    and a manager, Ms. Hardeman, discussing pay, and I was

09:50:59 10    wondering why they were discussing pay.  I mean, I

09:51:01 11    thought that was all supposed to be done and over with.

09:51:04 12    I heard the whispers through the station and through the

09:51:09 13    offices and things of what was going on.  And then one

09:51:12 14    day, I was sitting at my desk and we were filling out

09:51:14 15    papers, and me and another agent was sitting there

09:51:17 16    wondering what was going on.  And because of the

09:51:20 17    confusion at that location -- there's a lot of confusion

09:51:23 18    at that location.  You know, I said:  I don't want to

09:51:27 19    get into it.  I said:  If anything happens, I know in

09:51:30 20    the union, because my father was in the union for years,

09:51:33 21    they can't do anything on the floor.  And then Laura

09:51:37 22    confirmed that because some of the agents did discuss

09:51:43 23    that with Laura in there.

09:51:43 24        Q.    What -- was Ms. Beckworth in the same work

09:51:46 25    group as you are --

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                          2/29/2012

28

| 09:51:47 | 1 | A.  Yes. |
| 09:51:48 | 2 | Q.  -- as you were? |
| 09:51:48 | 3 | A.  Yes. |
| 09:51:49 | 4 | Q.  You were both -- at that time, you were both |
| 09:51:52 | 5 | in -- |
| 09:51:52 | 6 | A.  The same category. |
| 09:51:54 | 7 | Q.  -- credit and activation? |
| 09:51:55 | 8 | A.  Yes, we were. |
| 09:51:56 | 9 | Q.  And did you have the same supervisors? |
| 09:51:59 | 10 | A.  No. |
| 09:52:01 | 11 | Q.  Who was your supervisor then? |
| 09:52:03 | 12 | A.  Ben something.  I'm not sure of his last |
| 09:52:08 | 13 | name -- |
| 09:52:08 | 14 | Q.  Okay. |
| 09:52:08 | 15 | A.  -- because I never seen it -- |
| 09:52:11 | 16 | Q.  I know.  Like I said at the beginning, this is |
| 09:52:14 | 17 | part memory test. |
| 09:52:16 | 18 | A.  Okay. |
| 09:52:21 | 19 | Q.  Okay.  But what happened, though, in |
| 09:52:24 | 20 | September -- in the end of 2008 -- |
| 09:52:26 | 21 | A.  Ben Ateku. |
| 09:52:28 | 22 | Q.  Was your supervisor? |
| 09:52:30 | 23 | A.  Uh-huh. |
| 09:52:30 | 24 | Q.  Okay.  What happened, Ms. Shelton, in the end |
| 09:52:33 | 25 | of 2008 that convinced you that Leticia Beckworth was |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

29

| | | |
|---|---|---|
| 09:52:43 | 1 | making more than you were?  And Ms. Beckworth started |
| 09:52:46 | 2 | the same -- |
| 09:52:46 | 3 | A.   Day. |
| 09:52:47 | 4 | Q.   -- day as you? |
| 09:52:48 | 5 | A.   Right. |
| 09:52:48 | 6 | Q.   Okay.  Same position? |
| 09:52:50 | 7 | A.   Yes. |
| 09:52:50 | 8 | Q.   Okay. |
| 09:52:54 | 9 | A.   Well, at that time, I didn't think it was |
| 09:52:56 | 10 | anything.  You know, it didn't bother me because -- |
| 09:52:59 | 11 | Q.   What -- what didn't bother you? |
| 09:53:01 | 12 | A.   If she was making more money than me.  And at |
| 09:53:03 | 13 | that time, I didn't know if she was or anything, but I |
| 09:53:05 | 14 | just heard the agents, other agents, because it made |
| 09:53:07 | 15 | them even angrier. |
| 09:53:09 | 16 | Q.   But you see what I'm trying to figure out, |
| 09:53:10 | 17 | though, is:  When did you know that Leticia was making |
| 09:53:13 | 18 | more than you? |
| 09:53:15 | 19 | A.   At the time, I -- you know, there was a lot of |
| 09:53:19 | 20 | talk.  We lost a lot of agents at that time, too.  I |
| 09:53:22 | 21 | didn't really know until February, when my check |
| 09:53:25 | 22 | started, because in December -- |
| 09:53:28 | 23 | Q.   February of? |
| 09:53:30 | 24 | A.   2000 -- |
| 09:53:32 | 25 | Q.   2009? |

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

30

09:53:34  1        A.    No.  I didn't even know until 2010.

09:53:36  2        Q.    Okay.

09:53:38  3        A.    I didn't even know for sure.  There was no

09:53:40  4   reason for me to hack or anything about that because

09:53:43  5   that was hearsay.  I don't deal with hearsay.

09:53:43  6        Q.    Uh-huh.

09:53:48  7        A.    I don't like to deal with hearsay.

09:53:49  8              So what I did is that I -- you know, I

09:53:51  9   just went along.  And then in December 2010, before she

09:53:57  10  left, she confirmed that.  She even pulled up her

09:54:03  11  information and showed it to me in the screen, and I

09:54:06  12  told her:  You know what?  And then when I found out,

09:54:10  13  that day, which was a Friday --

09:54:12  14       Q.    Uh-huh.

09:54:12  15       A.    -- I tried to pull up my check and I could not

09:54:14  16  pull up my check.  My -- in the system, it came up --

09:54:21  17  which you-all should have a picture of.

09:54:24  18       Q.    Well, we'll get to that.  So let me try to put

09:54:26  19  some time frames here.

09:54:27  20             So December -- well, the end of 2008, you

09:54:30  21  were hearing that Leticia Beckworth was making more

09:54:35  22  money than you?

09:54:36  23       A.    And I also heard her and her manager discuss

09:54:38  24  that as well, about a raise and what she needed to put

09:54:42  25  on the paper and what she needed to fill out on the

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

38

10:03:03  1        A.   No, I've never heard of it.

10:03:05  2        Q.   Okay.

10:03:08  3        A.   That was never discussed, nor were negotiations

10:03:13  4   prior to.

10:03:14  5        Q.   I'm looking back at your complaint, your

10:03:16  6   original complaint, Exhibit 1.

10:03:18  7        A.   Uh-huh.

10:03:19  8        Q.   You also say:  You -- I also believe that I

10:03:22  9   have been discriminated against on the basis of

10:03:25 10   retaliation, in that I have been subjected to adverse

10:03:29 11   treatment as a result of my complaints.

10:03:34 12             So what was the adverse treatment that

10:03:37 13   you're referring to in this complaint?

10:03:42 14        A.   Not knowing all the union regulations, because

10:03:45 15   I hadn't read the book at the time, I got sick in

10:03:49 16   January of 2010.  One day, I was very sick and they -- I

10:04:06 17   had to go to the emergency room.  I had to leave my job

10:04:10 18   and I went to the emergency room.  And when I came back

10:04:21 19   to work, I brought an excuse for not being there, not

10:04:25 20   knowing that, you know, at the time, because I didn't

10:04:28 21   have the rules and regulations of the book, that I

10:04:34 22   wasn't going to get paid for my short-term disability.

10:04:37 23   And I was, like:  Why is it short-term disability when

10:04:43 24   you're sick for a few hours?  I said:  Couldn't I take

10:04:48 25   sick time?  And I couldn't understand why it was

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

39

| | | |
|---|---|---|
| 10:04:52 | 1 | short-term disability, because that's what was told to |
| 10:04:57 | 2 | me, that I would have to fill out these forms.  My |
| 10:05:00 | 3 | manager, Sherry Rea, gave me these forms to fill out for |
| 10:05:04 | 4 | short-term disability.  And I'm like:  What do I need to |
| 10:05:08 | 5 | do with short-term disability?  I was only off 3 days -- |
| 10:05:14 | 6 | I mean 3 hours, approximately 3 to 4 hours -- I'm not |
| 10:05:16 | 7 | sure exactly -- from sick, you know, because they said |
| 10:05:18 | 8 | that I didn't have any time available on the books. |
| 10:05:20 | 9 | So I said:  Well, okay. |
| 10:05:24 | 10 | So she said:  You need to get these |
| 10:05:26 | 11 | approved.  She had me to call the Line 4, and I do have |
| 10:05:30 | 12 | copies of that for short-term disability -- |
| 10:05:30 | 13 | Q.  Uh-huh. |
| 10:05:34 | 14 | A.  -- for those 3 hours to get paid.  It took me |
| 10:05:37 | 15 | approximately 3 months to get that approved, calling my |
| 10:05:40 | 16 | doctor, going through the emergency room.  I'm like: |
| 10:05:43 | 17 | This is ridiculous. |
| 10:05:45 | 18 | And then after all of that was done, plus |
| 10:05:48 | 19 | I was trying to discuss with them about my pay raise -- |
| 10:05:51 | 20 | Q.  Uh-huh. |
| 10:05:56 | 21 | A.  -- I'm like:  What is going on?  You know, and |
| 10:05:58 | 22 | I was trying to knock that out of the way, because it |
| 10:06:01 | 23 | took me a while to get that straightened out.  I got it |
| 10:06:04 | 24 | approved and I still didn't get paid. |
| 10:06:06 | 25 | And then later on with my union, |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

40

10:06:08  1   approximately about almost 9 months later, we were going

10:06:11  2   through the book, and I found out that, you know, you

10:06:14  3   had to be absent at least 2 days or within -- I'm not

10:06:18  4   sure exactly, but it's in here --

10:06:18  5       Q.    Uh-huh.

10:06:21  6       A.    -- before you were even paid sick time or, you

10:06:24  7   know, or paid -- or approved.  Your sick time was

10:06:27  8   approved.

10:06:27  9       Q.    Okay.

10:06:29  10      A.    And I'm like:  Okay.  I need to start reading

10:06:31  11  this book.

10:06:32  12      Q.    Uh-huh.  So let me see.  You were -- in January

10:06:38  13  of 2010, you were --

10:06:40  14      A.    Extremely sick.

10:06:41  15      Q.    -- you were sick?

10:06:42  16      A.    So that's the reason I really didn't go into

10:06:44  17  detail about things because I had been sick, and that

10:06:49  18  was after the fact she had told me, too.  That was in

10:06:54  19  January and I was really sick, but I was coming to work

10:06:56  20  anyway because I didn't want any additional -- because I

10:06:59  21  had never been sick since I had been there until then.

10:07:01  22  It was in 2010.  And I -- I mean, I had perfect

10:07:05  23  attendance, pretty much.

10:07:07  24      Q.    Was there any other -- any other action that

10:07:14  25  occurred in which you are claiming to have been

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

41

| | | |
|---|---|---|
| 10:07:20 | 1 | retaliated against and adversely treated -- |
| 10:07:24 | 2 | A.   Yes. |
| 10:07:24 | 3 | Q.   -- based on Exhibit 1? |
| 10:07:32 | 4 | A.   Someone went into the system -- I filed an EEOC |
| 10:07:36 | 5 | suit with internal -- with the company, because of the |
| 10:07:41 | 6 | fact on July the 3rd, when I got ready to leave, my |
| 10:07:45 | 7 | schedule was changed. |
| 10:07:49 | 8 | Q.   July 3rd of what year? |
| 10:07:50 | 9 | A.   In the system, because of the way they do |
| 10:08:00 | 10 | vacation at the location, they don't want you to be off |
| 10:08:08 | 11 | the entire week a lot of times, so things of that nature |
| 10:08:14 | 12 | go on where they can just go in and change your |
| 10:08:16 | 13 | schedule. |
| 10:08:17 | 14 |         And on that date, they went in and changed |
| 10:08:19 | 15 | my schedule on July the 3rd, after my manager had left |
| 10:08:22 | 16 | and most of the people were gone, because I had a late |
| 10:08:26 | 17 | shift.  Due to adverse -- mistreatment, I was there that |
| 10:08:36 | 18 | late.  So when I got ready to leave that day, it popped |
| 10:08:42 | 19 | up on the system that -- no call/no show. |
| 10:08:48 | 20 | Q.   This was for July 3rd? |
| 10:08:50 | 21 | A.   Right.  And it was on July the 5th -- 5th as a |
| 10:08:56 | 22 | no call/no show, and I'm, like:  Why is this -- you |
| 10:09:06 | 23 | know, because something dinged at the bottom of the |
| 10:09:07 | 24 | screen, and at the time I didn't have a call.  Usually, |
| 10:09:08 | 25 | the time if there's a ding, you know there's something |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                        2/29/2012

42

| | |
|---|---|
| 10:09:10 | 1 |
| 10:09:14 | 2 |
| 10:09:19 | 3 |
| 10:09:20 | 4 |
| 10:09:22 | 5 |
| 10:09:29 | 6 |
| 10:09:31 | 7 |
| 10:09:34 | 8 |
| 10:09:36 | 9 |
| 10:09:42 | 10 |
| 10:09:42 | 11 |
| 10:09:45 | 12 |
| 10:09:47 | 13 |
| 10:09:48 | 14 |
| 10:09:51 | 15 |
| 10:09:54 | 16 |
| 10:09:57 | 17 |
| 10:09:58 | 18 |
| 10:10:00 | 19 |
| 10:10:02 | 20 |
| 10:10:03 | 21 |
| 10:10:06 | 22 |
| 10:10:07 | 23 |
| 10:10:12 | 24 |
| 10:10:14 | 25 |

1   there.  You can check it out when you get off the phone.

2   So after I got off the phone, I checked it.  And it was

3   like probably an hour right before I was supposed to

4   leave to start my vacation.

5              So I looked in the screen and it said:  No

6   call/no show.  And I, you know, found out from other

7   people that no call/no shows mean that you didn't show

8   up to work, but you were supposed to be there.

9        Q.   So this would have been after July 3rd you

10   looked at the screen?

11        A.   No.  I looked at it July the 3rd.

12        Q.   Okay.  I guess I don't understand, Ms. Shelton.

13   You said --

14        A.   If I was at work on July the 3rd, 2010 --

15        Q.   And -- and the system showed you as a no

16   call/no show for July 3rd?

17        A.   Right.

18        Q.   When you were at work?

19        A.   No.  On July the 3rd, when I was at work --

20        Q.   Yes.

21        A.   -- it showed a no call/no show.

22        Q.   For a previous day somewhere?

23        A.   No.  For the next week.  In other words, the

24   vacation -- you know, you had to have it in -- you're

25   supposed to have it in there a week in advance, but ours

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

43

10:10:18  1    didn't come out until that Saturday, sometimes not until

10:10:21  2    that Monday, or --

10:10:21  3         Q.   Uh-huh.

10:10:23  4         A.   I mean, you know, it wouldn't come out till

10:10:25  5    that Friday or Saturday, your week.  But then later on,

10:10:28  6    they did start doing a week in advance, so you would

10:10:30  7    know in advance what your schedule would be.

10:10:32  8         Q.   Okay.

10:10:32  9         A.   But at that time, it came up in the system on

10:10:35  10   that Saturday what my schedule was going to be, and it

10:10:40  11   had a no call/no show.  And I'm, like, they're not

10:10:44  12   supposed to do this.  This is not -- so I went to my

10:10:48  13   union about it.  And when I came back off of vacation,

10:10:58  14   and I said:  I went ahead and took off because I didn't

10:11:02  15   have a choice.  I had plane tickets, everything, so --

10:11:06  16        Q.   Okay.

10:11:08  17        A.   But I was upset.  And that's when I called

10:11:10  18   EE- -- internal EEOC concerning it because there were

10:11:14  19   other things that were going on, too, that wasn't right.

10:11:16  20        Q.   And that's what I want to hear.

10:11:16  21        A.   Uh-oh.

10:11:18  22        Q.   You said in your original complaint that --

10:11:21  23   that the defendants retaliated against you.

10:11:26  24        A.   Yes, they did.

10:11:27  25        Q.   And you've been subjected to adverse

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

44

| | | |
|---|---|---|
| 10:11:30 | 1 | treatment -- |
| 10:11:30 | 2 | A.   Well, I thought -- |
| 10:11:30 | 3 | Q.   -- as a result of your complaints.  Now, I'm |
| 10:11:34 | 4 | trying to figure out what -- |
| 10:11:35 | 5 | A.   My adverse treatment was me trying to get an |
| 10:11:38 | 6 | approval for something that wasn't even necessary.  I |
| 10:11:41 | 7 | was calling the offices.  I mean, I was calling -- |
| 10:11:41 | 8 | Q.   For the -- the STD? |
| 10:11:41 | 9 | A.   -- AT&T for the short-term disability. |
| 10:11:44 | 10 | Q.   Okay.  That's one. |
| 10:11:44 | 11 | A.   And they said that they couldn't approve it. |
| 10:11:46 | 12 | And it -- |
| 10:11:46 | 13 | Q.   Okay. |
| 10:11:47 | 14 | A.   You know, and I was going to the doctor and she |
| 10:11:48 | 15 | was saying:  This is what I could state because this is |
| 10:11:51 | 16 | what happened, and then, too, I didn't actually treat |
| 10:11:54 | 17 | you.  So I had to call the emergency room and have them |
| 10:11:56 | 18 | to call my doctor.  I mean, it -- all this was going on |
| 10:11:59 | 19 | for approximately three months for me to get it |
| 10:12:02 | 20 | approved.  And then when I finally got it approved, we |
| 10:12:05 | 21 | went into my case concerning the pay raise. |
| 10:12:09 | 22 | Q.   Okay.  Well, let me stop you before the pay |
| 10:12:10 | 23 | raise, though. |
| 10:12:11 | 24 | A.   Okay. |
| 10:12:11 | 25 | Q.   When you got it approved, are you saying you |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

45

| | | |
|---|---|---|
| 10:12:15 | 1 | got the three hours? |
| 10:12:15 | 2 | A.   I did not get paid, as I stated once before. |
| 10:12:17 | 3 | Q.   No?  Well, you just said you got it approved. |
| 10:12:19 | 4 | A.   I got it approved. |
| 10:12:20 | 5 | Q.   I'm trying to figure out what you got approved. |
| 10:12:22 | 6 | A.   I got it approved that -- you know, she said I |
| 10:12:25 | 7 | had to get the sickness approved. |
| 10:12:25 | 8 | Q.   Uh-huh. |
| 10:12:27 | 9 | A.   So once I got it approved, I thought I was |
| 10:12:29 | 10 | going to get paid. |
| 10:12:30 | 11 | Q.   Oh, okay.  I understand. |
| 10:12:31 | 12 | A.   But I didn't get paid. |
| 10:12:32 | 13 | Q.   You didn't get paid because there's a waiting |
| 10:12:34 | 14 | time under the contract? |
| 10:12:35 | 15 | A.   Right.  Under the contract. |
| 10:12:36 | 16 | Q.   But you're not disputing that you were not |
| 10:12:39 | 17 | entitled to that; you just didn't -- you weren't gone |
| 10:12:42 | 18 | long enough to get into the paid time. |
| 10:12:45 | 19 | A.   But I should have been told that in advance by |
| 10:12:47 | 20 | my union -- |
| 10:12:47 | 21 | Q.   All right.  That's -- |
| 10:12:47 | 22 | A.   -- or either by AT&T that it was not necessary |
| 10:12:50 | 23 | to get it approved.  In other words, they let me go |
| 10:12:53 | 24 | through that, knowing that it would take a long time to |
| 10:12:55 | 25 | do it to me.  That's my -- my -- |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                       2/29/2012

46

10:12:58  1        Q.    I understand your point.

10:12:59  2        A.    Okay.

10:13:03  3        Q.    But just so we're clear on that point, you're

10:13:05  4   not claiming that you're entitled to some pay that you

10:13:08  5   didn't get, because, as I understand it, and you just

10:13:11  6   said, you didn't -- you weren't absent enough past the

10:13:17  7   waiting day, so you weren't entitled to any money for

10:13:20  8   your --

10:13:20  9        A.    My union --

10:13:21  10       Q.    -- your illness in January of 2010, right?

10:13:23  11       A.    Right.  My union or AT&T could have come to me

10:13:26  12  and let me know that.

10:13:27  13       Q.    Okay.

10:13:27  14       A.    They could have brought the book to me or

10:13:29  15  something of that nature.

10:13:29  16       Q.    And another adverse treatment you're -- you're

10:13:35  17  relying on in this case is that your vacation day was

10:13:38  18  changed to a no call/no show?

10:13:42  19       A.    Right.  In the week of the next week.

10:13:45  20       Q.    But if I understand -- in my research here, I

10:13:51  21  think I saw where you were -- you were allowed to take

10:13:53  22  vacation, nevertheless, for July 3rd.

10:13:58  23       A.    Well, I didn't have a choice.

10:13:59  24       Q.    But the company gave you vacation, right?

10:14:01  25       A.    Right.  They ended up -- because I went to the

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

47

| | | |
|---|---|---|
| 10:14:03 | 1 | EEOC.  On July the 3rd, 2011, I filed an internal case |
| 10:14:08 | 2 | with AT&T, and I was allowed to go ahead -- or they paid |
| 10:14:12 | 3 | me for the vacation date, but it was a week later. |
| 10:14:15 | 4 | Q.   Okay. |
| 10:14:16 | 5 | A.   In other words, it didn't come on my check like |
| 10:14:18 | 6 | it was originally supposed to, so that hurt me, too. |
| 10:14:22 | 7 | Q.   And you had mentioned in passing, but I just |
| 10:14:25 | 8 | want to make sure whether this is another adverse |
| 10:14:28 | 9 | treatment instance you're talking about -- |
| 10:14:32 | 10 | A.   Yes. |
| 10:14:32 | 11 | Q.   -- working late shifts.  Are you saying that |
| 10:14:36 | 12 | your shift selection, your shift assignment was in |
| 10:14:41 | 13 | retaliation for anything? |
| 10:14:45 | 14 | A.   Yes, I did. |
| 10:14:46 | 15 | Q.   How is that? |
| 10:14:46 | 16 | A.   And I gave a big statement on that as well.  At |
| 10:14:52 | 17 | the time, one class was coming in.  It was approximately |
| 10:14:55 | 18 | 30 people in the class.  I'm not sure of the exact date, |
| 10:14:58 | 19 | because I don't -- since I don't have all my notes in |
| 10:15:02 | 20 | front of me. |
| 10:15:02 | 21 | A class came in and we had gone through -- |
| 10:15:07 | 22 | it wasn't around this time.  I think it was the next |
| 10:15:10 | 23 | shift.  Again, I'm not sure when the next shift bid was. |
| 10:15:13 | 24 | But they came in and they were assigned to the floor. |
| 10:15:23 | 25 | You know, once you come in, you're assigned to the |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                      2/29/2012

48

| | | |
|---|---|---|
| 10:15:25 | 1 | floor.  At that time, you are able to get a better shift |
| 10:15:28 | 2 | to make sure that your training goes pretty good.  But |
| 10:15:32 | 3 | then after that was the next shift bid.  The next shift |
| 10:15:35 | 4 | bid is one I'm discussing because of the fact that they |
| 10:15:38 | 5 | were on the floor permanently. |
| 10:15:40 | 6 | Q.   Who is "they"? |
| 10:15:41 | 7 | A.   The 30 people that were on -- the new hires, |
| 10:15:44 | 8 | the 30 new hires. |
| 10:15:45 | 9 | Q.   Okay. |
| 10:15:45 | 10 | A.   They went into the shift bid as such as we -- |
| 10:15:49 | 11 | to do shift bids.  And at that time -- |
| 10:15:54 | 12 | Q.   And again, I apologize for interrupting, but |
| 10:15:56 | 13 | I'm trying to find out timewise when this -- when this |
| 10:15:59 | 14 | happened. |
| 10:16:00 | 15 | A.   I'm not sure.  I need to look at my notes on |
| 10:16:02 | 16 | that. |
| 10:16:02 | 17 | Q.   Okay.  Well, let me -- let me just back up a |
| 10:16:06 | 18 | bit. |
| 10:16:09 | 19 | Shift selection at your company, at AT&T, |
| 10:16:12 | 20 | is done via seniority, correct? |
| 10:16:16 | 21 | A.   That's correct. |
| 10:16:20 | 22 | Q.   And it's done via -- what I understand to be an |
| 10:16:22 | 23 | automated system in TotalView called -- sometimes |
| 10:16:26 | 24 | abbreviated as IEX? |
| 10:16:29 | 25 | A.   Yes, I think it is IEX. |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

49

| | | |
|---|---|---|
| 10:16:31 | 1 | Q.   At -- at one point in your career at the |
| 10:16:36 | 2 | company, your center was divided in different groups, |
| 10:16:40 | 3 | like inbound, outbound.  And I think each of those |
| 10:16:45 | 4 | groups was on different work schedules. |
| 10:16:49 | 5 | A.   It was inbound, outbound, credit and |
| 10:16:52 | 6 | activation, fraud, collections. |
| 10:16:54 | 7 | Q.   Right. |
| 10:16:54 | 8 | A.   Those -- |
| 10:16:55 | 9 | Q.   You had different work schedules, correct? |
| 10:16:59 | 10 | Each group had its own way of -- not "way," but it's -- |
| 10:17:01 | 11 | there was a work schedule for inbound folks.  There was |
| 10:17:05 | 12 | a work schedule for outbound, a work schedule for |
| 10:17:07 | 13 | different groups, right? |
| 10:17:07 | 14 | A.   But at the time that this 30 new hires came |
| 10:17:09 | 15 | in -- |
| 10:17:09 | 16 | Q.   Right. |
| 10:17:10 | 17 | A.   -- we were doing inbound and outbound and |
| 10:17:12 | 18 | credit and activations. |
| 10:17:13 | 19 | Q.   Got you.  So at that time, you were all -- |
| 10:17:15 | 20 | A.   We should have been all one work group, but we |
| 10:17:18 | 21 | were not. |
| 10:17:18 | 22 | Q.   Okay. |
| 10:17:18 | 23 | A.   And at the time -- |
| 10:17:19 | 24 | Q.   Well, let me stop you for a minute. |
| 10:17:22 | 25 | A.   Okay. |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012
                                                           50

```
10:17:22   1        Q.   You were all combined into one --
10:17:24   2        A.   Work group.
10:17:25   3        Q.   -- one big work group and you all did your --
10:17:28   4        A.   No.
10:17:29   5        Q.   "No" what?
10:17:30   6        A.   Inbound and outbound, they -- they tried to
10:17:34   7   keep us inbound, outbound -- well, they had stopped
10:17:37   8   credit and activation, so it was just inbound, outbound.
10:17:41   9   At the time the new 30 new hires came in --
10:17:44  10        Q.   Right.  This was when again?  I'm not looking
10:17:48  11   for an exact --
10:17:50  12        A.   When they were hired.
10:17:54  13        Q.   2011?  2010?  2009?
10:17:57  14        A.   In -- in '10, 2010.
10:18:00  15        Q.   Okay.
10:18:00  16        A.   But I did ask or suggest that I could take --
10:18:06  17   you know, why shouldn't I be able to bid inbound or
10:18:10  18   outbound at that time since I was been doing -- doing a
10:18:13  19   dual duty.
10:18:14  20        Q.   Okay.
10:18:14  21        A.   Because I would go to my desk and someone would
10:18:17  22   tell me --
10:18:17  23        Q.   Uh-huh.
10:18:18  24        A.   -- to go outbound.
10:18:19  25        Q.   Uh-huh.  But you were -- you were assigned,
```

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

51

10:18:21   1      though --

10:18:21   2          A.   To inbound.

10:18:22   3          Q.   -- to inbound?

10:18:23   4          A.   Right.

10:18:23   5          Q.   So your shift selection was done within the

10:18:27   6      inbound work group, correct?

10:18:29   7          A.   Yes.

10:18:29   8          Q.   Okay.  You're saying:  Because I did other

10:18:32   9      duties, such as outbound, I should have been able to --

10:18:36   10     to pick shifts.

10:18:39   11         A.   Not just me.  I felt like everybody in that

10:18:41   12     building should have had the opportunity to -- at that

10:18:44   13     time to shift bid as a group, because we were a group.

10:18:49   14         Q.   So this was happening to other people?

10:18:50   15         A.   Yes.

10:18:51   16         Q.   Okay.

10:18:54   17         A.   And that's the reason I felt like -- I mean

10:18:59   18     that whole inbound felt the same way I did, but it

10:19:02   19     didn't happen that way.  It later on did, but at the

10:19:05   20     beginning, it didn't happen that way, because at the

10:19:08   21     time, outbound was off on Saturdays; inbound was not off

10:19:13   22     on Saturdays.  So you automatically got a better

10:19:16   23     shift -- I mean, there were people there five and six

10:19:18   24     and seven years begging to be off on Saturdays --

10:19:18   25         Q.   Uh-huh.

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                        2/29/2012

52

| | | |
|---|---|---|
| 10:19:21 | 1 | A.    -- but they didn't get that opportunity.  That |
| 10:19:23 | 2 | was -- |
| 10:19:24 | 3 | Q.    That was the product of their being in a |
| 10:19:27 | 4 | different work group? |
| 10:19:28 | 5 | A.    Well, it was being in -- well, it's not -- they |
| 10:19:30 | 6 | were in the work group because of the fact that we were |
| 10:19:32 | 7 | doing inbound and outbound, but that wasn't offered to |
| 10:19:36 | 8 | us.  I feel like that that was a retal- -- I mean, to |
| 10:19:41 | 9 | me, it was retaliation to me, because I was going |
| 10:19:45 | 10 | through my case.  I don't know how the other people |
| 10:19:47 | 11 | felt, but I know they were very angry about it, having |
| 10:19:50 | 12 | to work Saturdays, and a lot of people did complain |
| 10:19:52 | 13 | about outbound not having to work Saturdays. |
| 10:19:54 | 14 | Later on, they were sent to outbound just |
| 10:20:01 | 15 | like they didn't have to work Saturdays or Sundays. |
| 10:20:04 | 16 | Outbound didn't have to work Saturdays or Sundays when I |
| 10:20:06 | 17 | first hired, but inbound had to work Saturdays. |
| 10:20:13 | 18 | Q.    Any other activities or actions that you are |
| 10:20:17 | 19 | saying in Defendants' Exhibit 1, your original |
| 10:20:22 | 20 | complaint, that you considered adverse treatment or |
| 10:20:25 | 21 | retaliation? |
| 10:20:27 | 22 | A.    It -- it kept going.  In other words, I went |
| 10:20:29 | 23 | into my system again about my vacation.  I had asked off |
| 10:20:36 | 24 | to be off on the -- another time for vacation, and since |
| 10:20:43 | 25 | I didn't get the day, I -- you know, I know -- well, it |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

53

10:20:49  1    didn't show up in the system.  Just forget it, then,

10:20:55  2    because --

10:21:00  3         Q.   I'm just trying to find out:  Are you -- in the

10:21:03  4    first -- the first vacation issue, you said a day was

10:21:06  5    changed, but you later said that you --

10:21:10  6         A.   Because I filed the EEOC.

10:21:13  7         Q.   -- you took off that -- you took off that day.

10:21:15  8         A.   Well, I didn't have a choice because I had

10:21:16  9    tickets.

10:21:16  10        Q.   Okay.  But you -- you took off that day and you

10:21:17  11   were paid for that day.  I'm trying to figure out if

10:21:20  12   there's any other vacation issue where you're either

10:21:23  13   saying I didn't get vacation or you didn't get paid.

10:21:26  14        A.   My manager had wrote up a complete reprimand

10:21:28  15   for me.  When I came back on -- from vacation, Sherry

10:21:34  16   Rea had wrote up a complete reprimand.

10:21:37  17        Q.   For the July 3rd issue?

10:21:38  18        A.   Right.

10:21:38  19        Q.   Okay.

10:21:39  20        A.   In 2010.

10:21:40  21        Q.   But that never -- she wrote it up, but it never

10:21:43  22   applied to you, right?

10:21:46  23        A.   It -- well, I told her I was going to file a

10:21:47  24   grievance on it, and it disappeared for some reason.

10:21:50  25        Q.   Okay.

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

54

| | | |
|---|---|---|
| 10:21:51 | 1 | A.   And I was eventually paid. |
| 10:21:53 | 2 | Q.   You weren't reprimanded?  You were not |
| 10:21:55 | 3 | reprimanded? |
| 10:21:55 | 4 | A.   Well, I wasn't reprimanded, but the fact that I |
| 10:21:57 | 5 | came in from vacation, that was retaliation.  To me, it |
| 10:22:01 | 6 | was, because she shouldn't have never done it if it |
| 10:22:03 | 7 | wasn't right. |
| 10:22:04 | 8 | Q.   Any other vacation issues, though, that -- that |
| 10:22:06 | 9 | you can give me specifics about today? |
| 10:22:08 | 10 | A.   When we did our shift bid, there was a vacation |
| 10:22:11 | 11 | issue. |
| 10:22:11 | 12 | Q.   What was that issue? |
| 10:22:13 | 13 | A.   It was an issue with my vacation, days |
| 10:22:42 | 14 | disappearing out of the system.  In other words, I had |
| 10:22:45 | 15 | asked off for a day -- because really, on July the 4th |
| 10:22:48 | 16 | every year, I would take my vacation, or if possible, |
| 10:22:52 | 17 | try to make that my first shift bid for my mother, |
| 10:22:55 | 18 | because I would go home to my mother, a 97-year-old. |
| 10:22:59 | 19 | That was my week, because I knew every year around that |
| 10:23:00 | 20 | time -- that was her birthday.  And I wanted to be home |
| 10:23:03 | 21 | on her birthday, to help her celebrate her birthday, |
| 10:23:03 | 22 | because her birthdays was very important to me. |
| 10:23:06 | 23 | Q.   Your mother's birthday is July -- |
| 10:23:08 | 24 | A.   The 4th. |
| 10:23:09 | 25 | Q.   -- the 4th?  Okay. |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                        2/29/2012

55

| | | |
|---|---|---|
| 10:23:11 | 1 | A.   So I had scheduled to be off that week, and |
| 10:23:14 | 2 | information disappeared out of the system for some |
| 10:23:17 | 3 | reason the day that my -- I had asked for that vacation |
| 10:23:21 | 4 | day off.  And I'm like:  How can it disappear?  I've got |
| 10:23:25 | 5 | copies of this where I asked for this, but for something |
| 10:23:29 | 6 | to disappear the week -- that Friday before you get |
| 10:23:34 | 7 | ready to go on vacation, it bothers me.  I mean -- |
| 10:23:39 | 8 | Q.   Did you go on vacation? |
| 10:23:40 | 9 | A.   Yes, I did, because -- |
| 10:23:40 | 10 | Q.   Were you -- |
| 10:23:42 | 11 | A.   -- like I said, I said:  I'm not going to |
| 10:23:45 | 12 | not -- and I told my manager the previous time when it |
| 10:23:48 | 13 | happened:  I'm not going to not go on vacation when the |
| 10:23:51 | 14 | system does this. |
| 10:23:52 | 15 | Q.   So this was -- |
| 10:23:53 | 16 | A.   The second time. |
| 10:23:54 | 17 | Q.   -- this was a year later? |
| 10:23:55 | 18 | A.   No.  It was a few months -- yeah, a year later. |
| 10:23:58 | 19 | Okay.  Yes. |
| 10:23:59 | 20 | Q.   Were you -- so you went on vacation? |
| 10:24:02 | 21 | A.   I went on vacation. |
| 10:24:03 | 22 | Q.   Were you paid for that vacation? |
| 10:24:04 | 23 | A.   Yes. |
| 10:24:04 | 24 | Q.   So you weren't denied vacation? |
| 10:24:07 | 25 | A.   But it delayed my pay again.  I mean, it |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

56

| | | |
|---|---|---|
| 10:24:09 | 1 | delayed my pay.  Each time these happen, it delayed my |
| 10:24:13 | 2 | pay, and I mean, I feel like that's adverse -- |
| 10:24:13 | 3 | Q.   How -- |
| 10:24:16 | 4 | A.   -- no reason for it happening. |
| 10:24:17 | 5 | Q.   How much delay, Ms. Shelton? |
| 10:24:19 | 6 | A.   A week.  One of them was two weeks. |
| 10:24:22 | 7 | Q.   Okay.  But -- |
| 10:24:22 | 8 | A.   The first time, I think it was approximately |
| 10:24:24 | 9 | two weeks.  The second time was a week. |
| 10:24:26 | 10 | Q.   Were you -- |
| 10:24:26 | 11 | A.   Well, the next pay period, because we get paid |
| 10:24:29 | 12 | every two weeks. |
| 10:24:30 | 13 | Q.   Right.  Were you ultimately paid, though, |
| 10:24:32 | 14 | for -- |
| 10:24:32 | 15 | A.   Yes. |
| 10:24:32 | 16 | Q.   -- the second? |
| 10:24:33 | 17 | A.   That's because I filed the EEOC. |
| 10:24:35 | 18 | Q.   Okay.  Anything else that -- that you consider |
| 10:24:38 | 19 | adverse treatment that you are referencing in Exhibit 1, |
| 10:24:46 | 20 | your original complaint? |
| 10:24:46 | 21 | A.   Not at this time, that I can remember. |
| 10:24:49 | 22 | Q.   Let me give you now Defendants' Exhibit 2. |
| 10:25:02 | 23 | This is a supplement you filed in the case, a supplement |
| 10:25:05 | 24 | to your complaint, dated May 25, 2011, correct? |
| 10:25:12 | 25 | A.   Yes. |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

59

10:28:28  1   the fifth page, which is your -- your charge with the

10:28:30  2   EEOC -- you're there -- my question to you is:  In the

10:28:36  3   middle, it says:  Respondent's reason for adverse

10:28:40  4   action.  And it states:  Issued warnings and discharged

10:28:47  5   because I was accused of failing to meet stats.

10:28:50  6            Are you disputing today that you did not

10:28:53  7   meet the stats referenced above, the written warnings?

10:28:59  8       A.   I wasn't -- I'm not disputing that.  I was --

10:29:03  9   everybody in that location was failing their stats,

10:29:06  10  because they had come out with a new whole training and

10:29:09  11  we were all failing our stats.  We had tried to talk to

10:29:12  12  our managers about the new change of our stats, but

10:29:16  13  nothing was done.  So when everybody started failing

10:29:20  14  their stats, they were aware of that.  Right now, they

10:29:24  15  no longer have those stats available.  They don't use

10:29:26  16  those stats anymore.

10:29:29  17      Q.   Okay.

10:29:29  18      A.   So they knew that they weren't working because

10:29:31  19  right -- the week before I was supposed to go on

10:29:33  20  vacation, I was yanked out of my class, because it

10:29:37  21  wasn't something that was scheduled, and I came to the

10:29:40  22  first meeting late because of the fact they just yanked

10:29:47  23  me into a class that they had set up at the last minute

10:29:50  24  to try to train us to correct our stats.  The first day

10:29:55  25  that I was in training, I failed my first call, which

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                2/29/2012

60

10:29:58  1    made me fail for the month, and they were aware of that.

10:30:02  2                    Also, I was written up because of the fact

10:30:09  3    I had failed my next quarter.  I mean, you know, my next

10:30:15  4    chance of being -- having the chance to even -- because

10:30:19  5    that was the beginning of the new month -- I mean,

10:30:22  6    ending of the month.

10:30:23  7        Q.    Uh-huh.

10:30:24  8        A.    But after that, I made two 100s.  I mean, I'm

10:30:27  9    sitting in the -- in the classroom where I have a

10:30:32  10   earpiece in my ear, someone is telling me exactly what

10:30:35  11   to say, and I'm in training.  I thought training wasn't

10:30:40  12   supposed to be counted, but it was.  And that's what

10:30:48  13   bothered me.  Not only that, but it counted against me,

10:30:52  14   which dropped my scores tremendously.  If you'll notice,

10:30:55  15   most of my scores was high.  I brought in 99,000 a month

10:30:59  16   in -- I mean, in collections, even though I wasn't in

10:31:02  17   collections, just on customer service.  I mean, I would

10:31:07  18   take payments from people at that time.

10:31:10  19       Q.    When you say you failed -- or weren't making

10:31:17  20   stats at the company, your job, and -- you and all the

10:31:22  21   other customer service reps were evaluated monthly on

10:31:26  22   your -- on your call handling, correct?

10:31:30  23       A.    Right.  With the call handling, I think it was

10:31:35  24   very objective, because of the fact it could be the tone

10:31:37  25   in your voice, it could be the tone of how the customer

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

61

| | | |
|---|---|---|
| 10:31:43 | 1 | calls in, like if a customer call in and they're angry |
| 10:31:47 | 2 | with AT&T, un- -- you know, it could be just or unjust. |
| 10:31:51 | 3 | It just depended on what the customer feel.  And in a -- |
| 10:31:55 | 4 | how they feel, really -- |
| 10:31:58 | 5 | Q.    Yeah. |
| 10:31:58 | 6 | A.    -- at the time the call goes on. |
| 10:32:00 | 7 | Q.    But everyone is evaluated the same -- |
| 10:32:03 | 8 | A.    No. |
| 10:32:03 | 9 | Q.    -- on the same basis, though, right? |
| 10:32:04 | 10 | A.    No, because the person who -- I feel like the |
| 10:32:06 | 11 | person who grades the call -- |
| 10:32:06 | 12 | Q.    Uh-huh. |
| 10:32:08 | 13 | A.    -- it just depends on the person who is grading |
| 10:32:10 | 14 | the call.  And you had different people grading the |
| 10:32:12 | 15 | calls.  To them, I may have a bad voice because I had a |
| 10:32:19 | 16 | person that was sitting next to me that was -- and |
| 10:32:23 | 17 | there's no offense -- that was of a different |
| 10:32:27 | 18 | denomination [sic] and, you know, it just depend, and |
| 10:32:31 | 19 | because at that time, it was just the tone of her voice |
| 10:32:37 | 20 | and the way she talks.  And she got low scores. |
| 10:32:40 | 21 | Q.    Well, let me ask, though:  I -- I understood |
| 10:32:44 | 22 | that you're evaluated primarily on -- on the quality of |
| 10:32:52 | 23 | your call.  I think it's called QA. |
| 10:32:55 | 24 | A.    Uh-huh. |
| 10:32:55 | 25 | Q.    And what's called a PCS or a post call survey? |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                      2/29/2012

62

10:33:02   1        A.    Uh-huh.

10:33:02   2        Q.    Correct?

10:33:03   3        A.    And that's just how the people feel about AT&T.

10:33:06   4   To me, that's objective, because a lot of people that

10:33:08   5   called in were angry.

10:33:10   6        Q.    I'm going to ask --

10:33:11   7        A.    You're not going to call me until you're angry

10:33:13   8   or mad about something that's wrong on your bill.

10:33:17   9   90 percent of those calls, I would say most people were

10:33:19  10   angry with AT&T or a situation that was going on,

10:33:23  11   because several people told me:  I'm going to sue AT&T.

10:33:27  12   I'm going to sue AT&T.  You know, it's just crazy.

10:33:29  13        Q.    But you scored -- there were many times when

10:33:33  14   you scored five out of five.

10:33:36  15        A.    Because you had to tone them down.

10:33:36  16        Q.    Okay.

10:33:37  17        A.    You had to sit there and actually --

10:33:39  18        Q.    But you could --

10:33:40  19        A.    But not all the time.  Not every call.

10:33:43  20        Q.    But you could do that, though, Ms. Shelton,

10:33:46  21   right?

10:33:46  22        A.    Right.  I could tone people down, but you're

10:33:50  23   not going to do it all the time.  So there's not going

10:33:52  24   to be a month that you're not going to fail.  As a good

10:33:55  25   agent.  I mean, you could be one of the of the best

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

63

| | |
|---|---|
| 10:33:58 | 1 |
| 10:34:03 | 2 |
| 10:34:05 | 3 |
| 10:34:09 | 4 |
| 10:34:11 | 5 |
| 10:34:16 | 6 |
| 10:34:19 | 7 |
| 10:34:22 | 8 |
| 10:34:31 | 9 |
| 10:34:34 | 10 |
| 10:34:36 | 11 |
| 10:34:38 | 12 |
| 10:34:40 | 13 |
| 10:34:40 | 14 |
| 10:34:43 | 15 |
| 10:34:52 | 16 |
| 10:34:53 | 17 |
| 10:34:53 | 18 |
| 10:46:07 | 19 |
| 10:46:08 | 20 |
| 10:46:11 | 21 |
| 10:46:17 | 22 |
| 10:46:20 | 23 |
| 10:46:25 | 24 |
| 10:46:31 | 25 |

agents in the company and still fail a call because of a
misaction of the customer or what you said to the
customer trying to be nice or give them, you know,
things to try to satisfy them.

    Q.   The -- the post call survey, or PCS, that's
kind of the report card from the customer, right?

    A.   It's the report card from the customer, but in
that PC- -- it also grades how AT&T is doing overall.

    Q.   Are -- are you okay?  Do you want to take a
break?  We're still talking about this performance
evaluation.

    A.   Yes, I can take a break.

    Q.   Okay.

    A.   I could just sit here because I am getting a
little frustrated.  He knows it.

                 MR. BOURGEACQ:  All right.  Break time.

                 (A recess was taken from

                  10:34 a.m. to 10:46 a.m.)

    Q.   (By Mr. Bourgeacq)  Ms. Shelton, we're back
from the break.  And when we broke, we were talking a
little bit about performance management, meeting stats,
that type of -- that subject area.  My follow-up
question there is:  You're evaluated, on the one hand,
by -- by the customer via PCS scores, and then the other
evaluation, I think, is on your call handling, which is

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                2/29/2012

64

| | |
|---|---|
| 10:46:35 | 1 |
| 10:46:38 | 2 |
| 10:46:39 | 3 |
| 10:46:45 | 4 |
| 10:46:50 | 5 |
| 10:46:52 | 6 |
| 10:46:52 | 7 |
| 10:46:59 | 8 |
| 10:47:02 | 9 |
| 10:47:03 | 10 |
| 10:47:06 | 11 |
| 10:47:09 | 12 |
| 10:47:10 | 13 |
| 10:47:15 | 14 |
| 10:47:18 | 15 |
| 10:47:21 | 16 |
| 10:47:24 | 17 |
| 10:47:30 | 18 |
| 10:47:36 | 19 |
| 10:47:41 | 20 |
| 10:47:48 | 21 |
| 10:47:50 | 22 |
| 10:47:52 | 23 |
| 10:47:55 | 24 |
| 10:47:56 | 25 |

your quality aspect, correct?

A.   Yes.

Q.   And do you know -- it's true, isn't it, that your calls are evaluated by some third -- third person, third party outside the center, right?

A.   That's correct.

Q.   And is that true for all the -- all your fellow agents at that time, too?  They were all evaluated the same way as you?

A.   That's correct.  That's the reason a lot of us was failing our calls at that time.  I mean, it was something that was a different changeover, but we were having a problem with some of our best agents failing calls because of that change.  And we were trying to straighten that out, but they did come to a conclusion after I left -- after I was terminated.

Q.   The changeover you're talking about was at the beginning of 2011, the scoring or evaluation system was adjusted a bit to combine quality and PCS scores into a blended score, was it not, if you remember?

I tell you what.  Let me ask you:  How did they change the performance management system?  I think I may have misstated it a bit, but I'm aware there was a change, too.

A.   There was quite a bit of change, because some

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                        2/29/2012

76

| | | |
|---|---|---|
| 11:00:59 | 1 | Q.   Understood.  But I just want to -- what I'm |
| 11:01:01 | 2 | trying to do is just understand what -- what issues are |
| 11:01:04 | 3 | in or not in dispute here. |
| 11:01:09 | 4 | So the record is clear, the raises that |
| 11:01:14 | 5 | you get, the progression raises and the annual contract |
| 11:01:19 | 6 | anniversary, the across-the-board union raise, you got |
| 11:01:24 | 7 | all those. |
| 11:01:25 | 8 | A.   That's correct. |
| 11:01:27 | 9 | Q.   Okay. |
| 11:01:27 | 10 | A.   But in the -- to confirm [sic] even matters |
| 11:01:33 | 11 | more, the union decide to give me two raises at one time |
| 11:01:36 | 12 | in April or March -- I'm not sure; it should be in |
| 11:01:39 | 13 | here -- to bring my rate up to my opponent. |
| 11:01:44 | 14 | Q.   Show me that, because I was going to ask you |
| 11:01:46 | 15 | about it.  I have a question whether the union can give |
| 11:01:49 | 16 | you a raise since really you work for the company, |
| 11:01:52 | 17 | right? |
| 11:01:52 | 18 | A.   Well, that's what I'm saying.  They told me |
| 11:01:54 | 19 | when I went to a meeting that they gave me those raises. |
| 11:01:57 | 20 | And I work for AT&T, so that bothered me.  So that's the |
| 11:02:00 | 21 | reason I did write up something about that. |
| 11:02:02 | 22 | Q.   And we might -- we might actually see that in |
| 11:02:05 | 23 | here somewhere. |
| 11:02:08 | 24 | A.   And it bothered me for them to -- to give me a |
| 11:02:14 | 25 | raise without going through the A- -- |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

85

| | | |
|---|---|---|
| 11:12:39 | 1 | amounts, and I was paid the next pay period, so I had to |
| 11:12:43 | 2 | wait an additional two weeks to get paid. |
| 11:12:47 | 3 | Q.   At the bottom of Page 32, that's your |
| 11:12:50 | 4 | signature, right? |
| 11:12:51 | 5 | A.   That's correct.  I faxed that information.  She |
| 11:12:55 | 6 | told me to either fax it -- |
| 11:12:56 | 7 | Q.   Okay. |
| 11:12:56 | 8 | A.   -- or mail it to her, so I faxed it to her. |
| 11:12:58 | 9 | Q.   That's what I was asking. |
| 11:13:00 | 10 | A.   And that's the reason I signed it at the |
| 11:13:02 | 11 | bottom. |
| 11:13:02 | 12 | Q.   Still on that page, it says:  In closing, I |
| 11:13:05 | 13 | want it to be known that even after I filed this EEO, |
| 11:13:09 | 14 | someone was -- someone still went into my IEX and |
| 11:13:12 | 15 | changed my day off. |
| 11:13:13 | 16 | Are you saying -- I mean, that's the |
| 11:13:15 | 17 | inference I get is:  Before you filed this EEO, before |
| 11:13:20 | 18 | you complained to the company, the stuff that you're |
| 11:13:24 | 19 | talking about was going on. |
| 11:13:26 | 20 | A.   Right.  It continued even after this.  That's |
| 11:13:28 | 21 | the reason I was really -- I mean, it made me feel like: |
| 11:13:33 | 22 | Hey, is something wrong with me or what's going on?  Why |
| 11:13:36 | 23 | are these changes continuing to be done to me as an |
| 11:13:40 | 24 | individual?  I mean, I took it personal then, very |
| 11:13:43 | 25 | personal.  I mean, you -- I know there's errors and |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

98

| | | |
|---|---|---|
| 11:27:17 | 1 | Q.   Ms. Shelton, Page 48 is an e-mail to you and |
| 11:27:20 | 2 | several other people, dated August 21, 2010 from |
| 11:27:24 | 3 | Workforce Management.  First of all, who is Workforce |
| 11:27:30 | 4 | Management? |
| 11:27:30 | 5 | A.   Workforce Management is the people who put our |
| 11:27:34 | 6 | dates in the system for vacation and things of that |
| 11:27:37 | 7 | nature. |
| 11:27:37 | 8 | Q.   Okay. |
| 11:27:37 | 9 | A.   They also act, I think, as assistant managers |
| 11:27:41 | 10 | when the managers is not there or something, and they go |
| 11:27:43 | 11 | in and set schedules and change schedules and things of |
| 11:27:47 | 12 | that nature as well. |
| 11:27:51 | 13 | Q.   This e-mail is telling you and your -- I assume |
| 11:27:54 | 14 | these are all co-workers of yours. |
| 11:27:56 | 15 | A.   These are all my co-workers. |
| 11:27:58 | 16 | Q.   Okay.  And what is the e-mail telling you all? |
| 11:28:00 | 17 | A.   It is telling us to come out of inbound and go |
| 11:28:03 | 18 | into outbound. |
| 11:28:04 | 19 | Q.   Okay.  The purpose of your presenting this |
| 11:28:08 | 20 | e-mail to us is -- is what?  What does this show? |
| 11:28:12 | 21 | A.   The fact that they were using us inbound and |
| 11:28:15 | 22 | outbound, as I had said, but yet -- and still, when we |
| 11:28:22 | 23 | got ready to do our vacations and sick times -- |
| 11:28:22 | 24 | Q.   Uh-huh. |
| 11:28:27 | 25 | A.   -- and anything else, we were done -- not |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

| | | |
|---|---|---|
| 11:38:03 | 1 | that you provided to the National Labor Relations Board, |
| 11:38:10 | 2 | correct? |
| 11:38:10 | 3 | A.   That is correct. |
| 11:38:18 | 4 | Q.   Okay.  On the top of Page 2, you refer to |
| 11:38:22 | 5 | overhearing a conversation with Sherry Hardeman -- |
| 11:38:26 | 6 | A.   That is correct.  And it was -- |
| 11:38:27 | 7 | Q.   -- and Leticia Beckworth. |
| 11:38:29 | 8 | A.   That is correct. |
| 11:38:30 | 9 | Q.   And that relates to the conversation that you |
| 11:38:32 | 10 | had testified to earlier today? |
| 11:38:33 | 11 | A.   That is correct. |
| 11:38:36 | 12 | Q.   And if I asked you this already, I apologize: |
| 11:38:40 | 13 | Do you know how -- how old Leticia Beckworth was?  Was |
| 11:38:43 | 14 | she over 40, to your knowledge? |
| 11:38:48 | 15 | A.   I'm not sure.  I would like for the record to |
| 11:39:03 | 16 | know that I only went to the EEOC because of the simple |
| 11:39:09 | 17 | fact I had filed my grievance within the company in |
| 11:39:12 | 18 | February and let them know what was going on with my |
| 11:39:14 | 19 | pay. |
| 11:39:15 | 20 | Q.   February of when? |
| 11:39:20 | 21 | A.   2010. |
| 11:39:22 | 22 | Q.   Okay. |
| 11:39:23 | 23 | A.   After that, I went and filed another grievance |
| 11:39:25 | 24 | with my union in August.  Well, they didn't tell me to |
| 11:39:29 | 25 | go to my union.  I went through all this riffraff with |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

128

12:14:20  1    of these e-mails have the name Diego Pena on there.

12:14:23  2    He's an attorney within the company, so it's -- you

12:14:25  3    probably won't recognize that, but I want to talk to

12:14:28  4    you, then, about this e-mail exchange between

12:14:33  5    Ms. Stinemetz and you and Sherry Rea.

12:14:39  6              In the middle there, Monday, July 12,

12:14:42  7    2010, you're advised that:  We did some research, and it

12:14:45  8    appears that when you first request the time off for

12:14:47  9    that week, you didn't request off for Monday, July 5th.

12:14:51  10   We have gone ahead and changed the coding to a holiday

12:14:54  11   and have updated it.

12:14:56  12             So two things here:  It appears that

12:15:01  13   management looked into the July 5th issue in 2010 and

12:15:08  14   found that you didn't request that date off, for

12:15:11  15   whatever reason.  I mean, it could have been an

12:15:12  16   accident.  It could have been whatever.  But they went

12:15:16  17   ahead and fixed it, right?

12:15:18  18        A.   Yes, they did.

12:15:19  19        Q.   Okay.

12:15:20  20        A.   But you've got to take -- let me explain that.

12:15:22  21        Q.   Okay.

12:15:22  22        A.   I could have asked off for July the 5th because

12:15:28  23   someone had that day.  According to their policy,

12:15:31  24   someone can release the date.  They may not want to use

12:15:33  25   that as their vacation time.

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

130

| | | |
|---|---|---|
| 12:16:30 | 1 | correct? |
| 12:16:31 | 2 | A.   That's correct, but you don't have to do all of |
| 12:16:33 | 3 | it at that time. |
| 12:16:33 | 4 | Q.   No, I understand.  So around November, |
| 12:16:37 | 5 | December -- probably November, if it's like many of our |
| 12:16:41 | 6 | companies, you're allowed to select, I think, first, the |
| 12:16:45 | 7 | entire week at a time, right? |
| 12:16:49 | 8 | A.   That's correct. |
| 12:16:49 | 9 | Q.   By seniority, right? |
| 12:16:50 | 10 | A.   By seniority. |
| 12:16:51 | 11 | Q.   And then once all the weeks have been -- have |
| 12:16:54 | 12 | been selected, then you get to do what?  A day at a |
| 12:16:57 | 13 | time? |
| 12:16:58 | 14 | A.   Yes. |
| 12:16:59 | 15 | Q.   Okay. |
| 12:16:59 | 16 | A.   But I questioned by the week.  I mean, I |
| 12:17:02 | 17 | questioned vacation altogether, and so has other |
| 12:17:05 | 18 | employees within the company. |
| 12:17:06 | 19 | Q.   Why? |
| 12:17:07 | 20 | A.   It's not by seniority.  It's by shift bid, and |
| 12:17:11 | 21 | that's what bothers a lot of us.  You're bidding |
| 12:17:14 | 22 | regardless, because of the simple reason you could -- if |
| 12:17:18 | 23 | they did it by seniority -- |
| 12:17:20 | 24 | Q.   Uh-huh. |
| 12:17:21 | 25 | A.   -- you should be able to go into a room -- I |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

131

| | | |
|---|---|---|
| 12:17:25 | 1 | don't care if it's 2000 people -- and if you did it |
| 12:17:28 | 2 | strictly by seniority, go into a room, get approved.  I |
| 12:17:34 | 3 | mean, if it's -- okay.  In other words, you have 75 -- I |
| 12:17:39 | 4 | mean, we've had as many as 85 shift bids, of different |
| 12:17:46 | 5 | shift bids that you are going to bid for. |
| 12:17:46 | 6 | Q.   Uh-huh. |
| 12:17:48 | 7 | A.   The first 85 should get what they want, |
| 12:17:50 | 8 | regardless.  That's not true in this bidding. |
| 12:17:55 | 9 | Q.   Okay. |
| 12:17:55 | 10 | A.   That bothers a lot of us. |
| 12:17:56 | 11 | Q.   But you're -- you're talking about shift |
| 12:17:59 | 12 | bidding. |
| 12:18:00 | 13 | A.   Correct. |
| 12:18:00 | 14 | Q.   And I'm talking about vacation.  That's two |
| 12:18:03 | 15 | different -- |
| 12:18:03 | 16 | A.   Vacation and shift bidding, you -- you bid on |
| 12:18:06 | 17 | your vacation.  In other words -- |
| 12:18:07 | 18 | Q.   I understand, but -- |
| 12:18:08 | 19 | A.   -- when you go and bid on your vacation -- |
| 12:18:08 | 20 | Q.   Right. |
| 12:18:11 | 21 | A.   -- and if I ask for something -- |
| 12:18:12 | 22 | Q.   Uh-huh. |
| 12:18:13 | 23 | A.   -- right, and I was the top 85, there shouldn't |
| 12:18:17 | 24 | be any reason for me not to get what I want, but certain |
| 12:18:21 | 25 | people still did not get what they want, even though we |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:   GUERIVACE SHELTON                          2/29/2012
146

| | | |
|---|---|---|
| 12:33:43 | 1 | indicates five different dates, which I think those are |
| 12:33:48 | 2 | the dates that you are telling her someone went in and |
| 12:33:50 | 3 | changed; is that right? |
| 12:33:56 | 4 | A.   Those look like dates that were changed.  I |
| 12:33:58 | 5 | mean, some of them were changed. |
| 12:33:59 | 6 | Q.   Okay. |
| 12:33:59 | 7 | A.   But I don't remember this e-mail from K.J. |
| 12:34:00 | 8 | Johnson. |
| 12:34:00 | 9 | Q.   Okay. |
| 12:34:01 | 10 | A.   I did get an e-mail from Ms. Steinman, but I |
| 12:34:04 | 11 | did not get one from K.J. Johnson. |
| 12:34:04 | 12 | Q.   Well, when you say you say you got an e-mail |
| 12:34:07 | 13 | from Ms. Stinemetz, would that -- |
| 12:34:07 | 14 | A.   Well, she had -- |
| 12:34:09 | 15 | Q.   -- e-mail have this same info? |
| 12:34:10 | 16 | A.   Well, not exactly, because I don't remember the |
| 12:34:13 | 17 | dates above it.  She didn't -- those dates above it was |
| 12:34:16 | 18 | not in it. |
| 12:34:18 | 19 | Q.   Okay.  Well, let's talk about this, though.  So |
| 12:34:19 | 20 | there's -- there are five dates -- well, there's five |
| 12:34:24 | 21 | lines of dates there. |
| 12:34:24 | 22 | A.   Uh-huh. |
| 12:34:25 | 23 | Q.   So you were questioning -- |
| 12:34:26 | 24 | A.   Now, I did get this -- the raise. |
| 12:34:29 | 25 | Q.   Well, I want to -- stay with me now. |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

147

| | | |
|---|---|---|
| 12:34:32 | 1 | A.   Okay. |
| 12:34:32 | 2 | Q.   Let's talk about these dates.  You were -- |
| 12:34:36 | 3 | these were all days off or holidays, correct, that you |
| 12:34:39 | 4 | were -- you were having issue with the company doing |
| 12:34:42 | 5 | something, right? |
| 12:34:45 | 6 | A.   Yes, that's correct. |
| 12:34:47 | 7 | Q.   And you had -- you had these days off, correct? |
| 12:34:56 | 8 | A.   Eventually, they were corrected.  They were |
| 12:34:58 | 9 | corrected.  That's the difference in the pay, because I |
| 12:35:01 | 10 | didn't get paid those weeks.  I had to wait a week or |
| 12:35:04 | 11 | two weeks to get paid. |
| 12:35:05 | 12 | Q.   But you were -- |
| 12:35:06 | 13 | A.   Eventually paid. |
| 12:35:07 | 14 | Q.   According to this, you were paid. |
| 12:35:07 | 15 | A.   Eventually.  That's correct. |
| 12:35:09 | 16 | Q.   Then looking at the next paragraph, Ms. Johnson |
| 12:35:14 | 17 | says:  Looking at the union contract and the scale, your |
| 12:35:18 | 18 | paychecks match correctly with the step raises, and she |
| 12:35:21 | 19 | covers all your progression raises there, correct? |
| 12:35:29 | 20 | A.   Now, if this is dated July the 29th, it bothers |
| 12:35:33 | 21 | me. |
| 12:35:33 | 22 | Q.   Why? |
| 12:35:34 | 23 | A.   Because I didn't give her a response until |
| 12:35:37 | 24 | August. |
| 12:35:37 | 25 | Q.   Okay.  You didn't -- |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012
148

| 12:35:37 | 1 | A.   I gave her -- |
| 12:35:40 | 2 | Q.   -- give her -- |
| 12:35:40 | 3 | A.   I didn't give her a response to the questions |
| 12:35:44 | 4 | even down until August the 29th.  This is dated July the |
| 12:35:48 | 5 | 29th.  I had to respond back to her in August. |
| 12:35:51 | 6 | Q.   Uh-huh. |
| 12:35:51 | 7 | A.   So this had to be sent before she even got my |
| 12:35:54 | 8 | information. |
| 12:35:54 | 9 | Q.   But we already -- management already knew |
| 12:35:57 | 10 | that -- that you had some issues with pay raises, with |
| 12:36:05 | 11 | certain vacation -- |
| 12:36:05 | 12 | A.   She told me she wasn't even going to handle the |
| 12:36:11 | 13 | case until she got the response from me.  So to my |
| 12:36:13 | 14 | understanding, she didn't have anything when I spoke to |
| 12:36:16 | 15 | her. |
| 12:36:16 | 16 | Q.   Okay. |
| 12:36:22 | 17 | A.   So I'm wondering -- I mean, it bothers me, too, |
| 12:36:25 | 18 | because I spoke to her and it was due in August the |
| 12:36:27 | 19 | 29th. |
| 12:36:27 | 20 | Q.   Uh-huh. |
| 12:36:28 | 21 | A.   But then this e-mail came out July the 29th. |
| 12:36:32 | 22 | That bothers me. |
| 12:36:35 | 23 | Q.   Well, could she have been doing some homework, |
| 12:36:37 | 24 | so to speak, to help you focus on -- |
| 12:36:38 | 25 | A.   She told me she would give me a response after |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

172

| | | |
|---|---|---|
| 13:56:14 | 1 | let me finish reading. |
| 13:56:15 | 2 | Q.   Well, just some basic questions:  Did you have |
| 13:56:19 | 3 | a -- or recall a meeting with Ms. Hampton in March of |
| 13:56:23 | 4 | 2011 to discuss, among other things, how to -- how to do |
| 13:56:31 | 5 | work shift bids? |
| 13:56:32 | 6 | A.   Okay.  The purpose of this meeting is because |
| 13:56:35 | 7 | they give you about 30 minutes to do a shift bid on |
| 13:56:43 | 8 | 80-some calls -- 80-some shifts.  This is how much time |
| 13:56:45 | 9 | you get.  They give you anywhere from 30, and then |
| 13:56:50 | 10 | sometimes, when I kept complaining, they eventually just |
| 13:56:53 | 11 | let me go until I finished it.  But when I first went |
| 13:56:57 | 12 | in, you would actually have to take it home.  This is |
| 13:56:59 | 13 | work that you had to take home and do, and a lot of |
| 13:57:03 | 14 | people did it.  It was a lot of people that took it home |
| 13:57:05 | 15 | and did it. |
| 13:57:05 | 16 | Q.   So it wasn't just -- just -- |
| 13:57:08 | 17 | A.   Just me doing it. |
| 13:57:09 | 18 | Q.   -- Guerivace Shelton. |
| 13:57:09 | 19 | A.   This was -- |
| 13:57:11 | 20 | Q.   I mean, everybody in the office -- |
| 13:57:11 | 21 | A.   They would do it at home. |
| 13:57:13 | 22 | Q.   -- had to pick shifts the same way, right? |
| 13:57:16 | 23 | A.   Yes.  But what I'm saying, on these shifts, and |
| 13:57:19 | 24 | the reason I asked for extra time is because I say: |
| 13:57:22 | 25 | Wait a minute.  I have to actually take this home to |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

173

| | | |
|---|---|---|
| 13:57:24 | 1 | organize this the way they send it to me or the way it's |
| 13:57:29 | 2 | sent out.  If they would just send one sheet out in |
| 13:57:33 | 3 | number -- I mean, I know it's different ways people want |
| 13:57:36 | 4 | their days off. |
| 13:57:37 | 5 | Q.    Right. |
| 13:57:37 | 6 | A.    But to go through 85, you could accidentally |
| 13:57:41 | 7 | put something in the wrong place.  If it was by |
| 13:57:46 | 8 | seniority, I don't -- like I said before:  You were |
| 13:57:50 | 9 | shift bidding.  You were not being done by seniority |
| 13:57:58 | 10 | with AT&T.  You were bidding for a shift, which you |
| 13:58:01 | 11 | shouldn't have had to.  Because of your seniority, you |
| 13:58:03 | 12 | come in and tell them, the first 85 people -- was it |
| 13:58:06 | 13 | 85 -- tell them what you want.  You don't know till a |
| 13:58:09 | 14 | week later what you got.  I mean, if we put it in the |
| 13:58:15 | 15 | system, it should come out right out to us.  Instead, |
| 13:58:18 | 16 | it's held for a week.  Why?  If you're putting it in the |
| 13:58:21 | 17 | system -- |
| 13:58:21 | 18 | Q.    Uh-huh. |
| 13:58:21 | 19 | A.    -- when I put it in the system, it should come |
| 13:58:23 | 20 | right back to me, telling me, because it's in the |
| 13:58:25 | 21 | system, or it should come -- they give us a week and the |
| 13:58:28 | 22 | deadline is for everybody.  That deadline is for |
| 13:58:32 | 23 | everybody. |
| 13:58:32 | 24 | Q.    Okay. |
| 13:58:32 | 25 | A.    If I put it in by that Friday, when the shift |

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                        2/29/2012

174

13:58:35   1    bids is over, I should get something -- I mean, the

13:58:38   2    computer is not going to lie.  But it doesn't matter --

13:58:42   3    you don't know what's being done if it's held out a week

13:58:45   4    for corrections.  Why is it held out a week for

13:58:48   5    corrections?  And that bothered me.  So that's the

13:58:51   6    reason I said:  Hey, since I kept getting bad shifts,

13:58:55   7    could somebody assist me because it's going to take me

13:58:59   8    more than 35 minutes to decipher 85 shifts.

13:59:02   9         Q.   And you've said a lot of things in your answer,

13:59:04   10   so let me try to re- -- re-cover some of the -- of the

13:59:10   11   things you said.

13:59:11   12              You say initially, you had 30 minutes to

13:59:15   13   do this, but I think you -- you said -- and I -- I've

13:59:18   14   read somewhere in the notes, too -- that at some point,

13:59:22   15   management gave you a couple of hours or more to do your

13:59:26   16   shift bid, right?

13:59:27   17        A.   Yeah, because it takes that long.  Unless you

13:59:30   18   take it home to work on it, it's going to take you more

13:59:32   19   than 30 minutes.  And AT&T and the union both knows

13:59:36   20   that, because you're shift bidding.  And the least

13:59:39   21   little thing you do could screw your whole shift bid up

13:59:41   22   because it's a bid and not a seniority.

13:59:44   23        Q.   The shift -- the shift selection process is the

13:59:50   24   same for all co-workers, right?

13:59:51   25        A.   And that's the reason I did complain about

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                        2/29/2012

175

13:59:54   1    that, and it wasn't just for me, because I knew that we

13:59:58   2    were all having problems with that, because there's

14:00:00   3    people had been there five and six years still on

14:00:02   4    Saturdays, some people as much as 8 years.  And it's not

14:00:06   5    because they want to, some of them, because I've talked

14:00:08   6    to some of them.  I had talked about my shift because I

14:00:11   7    said:  Okay.  But it wasn't a long discussion, but I

14:00:16   8    mean, it's just -- I said:  Okay.  Just forget it.  I'm

14:00:19   9    just going to ask them to help me.

14:00:20  10        Q.   But based on what you said, Ms. Shelton, it

14:00:23  11    seems like the -- the concerns or problems you had with

14:00:26  12    the shift selection process existed months, if not

14:00:34  13    years, before you ever went to the EEOC.

14:00:38  14        A.   That's correct.  I didn't know -- like I told

14:00:45  15    you, I didn't know my rights totally to the union

14:00:48  16    because it's just a piece of paper.  You sign here, get

14:00:50  17    into the system.  I think that -- that to -- well, my

14:00:52  18    opinion, the least you know, the better, because they

14:00:54  19    could screw you over.  That's the way I looked at it, or

14:00:57  20    do as they please.

14:01:02  21             To me, if they would explain things a

14:01:03  22    little bit more or give you a session to discussion

14:01:06  23    things before you're hired and what's your rights and

14:01:08  24    what's not your rights and what you can do until you get

14:01:11  25    in trouble; once you get in trouble, you're pretty much

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

195

14:24:59   1      Q.   -- and that type.  Is that what you're saying

14:25:01   2   is --

14:25:01   3      A.   That's what I was saying, because some things,

14:25:05   4   I didn't go into it because it was so long back, because

14:25:08   5   I did go back on some of my other checks and seen it,

14:25:10   6   but I'm saying it -- I mean, it's ridiculous that I had

14:25:14   7   to sit there.  And I think when they came out in January

14:25:17   8   with the new system, that was supposed to correct all

14:25:19   9   that stuff.

14:25:21  10      Q.   Okay.  With regard to this claim, though, that

14:25:24  11   you say:  Specifically, I have been denied overtime pay,

14:25:28  12   is that still -- are you still claiming today that

14:25:31  13   you've been denied overtime pay?

14:25:33  14      A.   In other words, the pay?  No --

14:25:36  15      Q.   Okay.

14:25:36  16      A.   -- because those things were adjusted now, and

14:25:39  17   that was before some of the things were adjusted.  You

14:25:41  18   see what I'm saying?

14:25:41  19      Q.   Uh-huh.

14:25:42  20      A.   I filed that in February.

14:25:43  21      Q.   Thanks.  You clarified that.

14:25:45  22           And then when you say:  My hours worked

14:25:47  23   and approved days off have been manipulated and changed,

14:25:50  24   we've been talking about that all throughout.

14:25:53  25      A.   And it was.

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:   GUERIVACE SHELTON                        2/29/2012

193

| | | |
|---|---|---|
| 14:22:36 | 1 | leery of what can be done at that company.  I am.  I |
| 14:22:41 | 2 | mean, there's been so many things that just show up out |
| 14:22:44 | 3 | of the blue or disappear out of the blue, it makes you |
| 14:22:46 | 4 | wonder:  Is it me or what?  But you have to make sure |
| 14:22:53 | 5 | you document everything.  Like they say:  Dot your I's |
| 14:22:57 | 6 | and cross your T's.  Make sure you have something to |
| 14:23:00 | 7 | back you up, or the union is not going to help you. |
| 14:23:08 | 8 | Q.   Looking at Defendants' Exhibit 26, can you tell |
| 14:23:10 | 9 | us what that is? |
| 14:23:15 | 10 | A.   It's a charge of discrimination. |
| 14:23:17 | 11 | Q.   Is this the first charge you filed? |
| 14:23:22 | 12 | A.   Yes, it is. |
| 14:23:23 | 13 | Q.   Okay. |
| 14:23:28 | 14 | A.   February 17th. |
| 14:23:31 | 15 | Q.   And at the end of the first long paragraph, you |
| 14:23:37 | 16 | say that you're subject to ongoing retaliation, and then |
| 14:23:41 | 17 | you say:  Specifically, I've been denied overtime pay |
| 14:23:45 | 18 | and my hours worked and approved days off have been |
| 14:23:48 | 19 | manipulated. |
| 14:23:49 | 20 | A.   That's what we looked at earlier in these |
| 14:23:52 | 21 | forms, and I did give you -- you had the copies of the |
| 14:23:54 | 22 | days that I -- |
| 14:23:57 | 23 | Q.   When you say you had been denied overtime pay, |
| 14:24:00 | 24 | how were you -- how did the company deny you that? |
| 14:24:02 | 25 | A.   Well, in other words, I had worked the |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                                    2/29/2012

194

| | | |
|---|---|---|
| 14:24:03 | 1 | overtime, but they didn't pay me for it.  In other |
| 14:24:06 | 2 | words, the way that she stated it, I don't think she |
| 14:24:08 | 3 | stated it properly, and I did tell her in there. |
| 14:24:08 | 4 | Q.   Uh-huh. |
| 14:24:10 | 5 | A.   But I told her it's okay, and I would do more |
| 14:24:13 | 6 | in my case that I had filed with the National Labor |
| 14:24:20 | 7 | Relations Board, that it wasn't the fact that I was |
| 14:24:22 | 8 | denied.  I said that they did not pay me properly. |
| 14:24:28 | 9 | Q.   Okay.  What -- what did they not pay you |
| 14:24:29 | 10 | properly?  Is this the pay raise issue? |
| 14:24:31 | 11 | A.   This is before they went back and corrected |
| 14:24:33 | 12 | these things that's on these sheets here.  You'll see |
| 14:24:35 | 13 | the corrections on them and the adjustments and stuff of |
| 14:24:37 | 14 | that nature. |
| 14:24:38 | 15 | Q.   Okay. |
| 14:24:38 | 16 | A.   And they were doing it on a constant basis. |
| 14:24:41 | 17 | It's not something that just happened one time or -- I |
| 14:24:44 | 18 | mean, but it was like back to back to back.  You know, |
| 14:24:46 | 19 | if you make an error, you're not going to make that |
| 14:24:49 | 20 | error again and again and again.  It's done at least |
| 14:24:52 | 21 | three or four times. |
| 14:24:53 | 22 | Q.   At -- I think in the response to the questions |
| 14:24:55 | 23 | I had, you provided some pay stubs that showed overtime |
| 14:24:58 | 24 | and adjustments -- |
| 14:24:59 | 25 | A.   Yeah. |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

195

| | | |
|---|---|---|
| 14:24:59 | 1 | Q.    -- and that type.  Is that what you're saying |
| 14:25:01 | 2 | is -- |
| 14:25:01 | 3 | A.    That's what I was saying, because some things, |
| 14:25:05 | 4 | I didn't go into it because it was so long back, because |
| 14:25:08 | 5 | I did go back on some of my other checks and seen it, |
| 14:25:10 | 6 | but I'm saying it -- I mean, it's ridiculous that I had |
| 14:25:14 | 7 | to sit there.  And I think when they came out in January |
| 14:25:17 | 8 | with the new system, that was supposed to correct all |
| 14:25:19 | 9 | that stuff. |
| 14:25:21 | 10 | Q.    Okay.  With regard to this claim, though, that |
| 14:25:24 | 11 | you say:  Specifically, I have been denied overtime pay, |
| 14:25:28 | 12 | is that still -- are you still claiming today that |
| 14:25:31 | 13 | you've been denied overtime pay? |
| 14:25:33 | 14 | A.    In other words, the pay?  No -- |
| 14:25:36 | 15 | Q.    Okay. |
| 14:25:36 | 16 | A.    -- because those things were adjusted now, and |
| 14:25:39 | 17 | that was before some of the things were adjusted.  You |
| 14:25:41 | 18 | see what I'm saying? |
| 14:25:41 | 19 | Q.    Uh-huh. |
| 14:25:42 | 20 | A.    I filed that in February. |
| 14:25:43 | 21 | Q.    Thanks.  You clarified that. |
| 14:25:45 | 22 | And then when you say:  My hours worked |
| 14:25:47 | 23 | and approved days off have been manipulated and changed, |
| 14:25:50 | 24 | we've been talking about that all throughout. |
| 14:25:53 | 25 | A.    And it was. |

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012

196

14:25:53  1      Q.    Okay.

14:25:54  2      A.    And that was ongoing until I left, because they

14:25:56  3   wouldn't even let me print, like I said before, on the

14:26:00  4   regular printer.  Days were disappearing.  When I went

14:26:08  5   on vacation in that July of 2011, I had to get K.J.

14:26:11  6   Johnson to make sure that I had all these days prior to

14:26:13  7   me leaving.

14:26:18  8      Q.    In that same paragraph, Ms. Shelton, you say:

14:26:21  9   Also, I was the only person in inbound collections who

14:26:23 10   was required to do outbound calls after 2010.  So before

14:26:28 11   you go further, let me ask this:  It's my understanding

14:26:31 12   that by -- after 2010, by last January, everybody was in

14:26:39 13   the same group, so everybody was doing the same kind of

14:26:44 14   work.

14:26:46 15      A.    No.

14:26:46 16      Q.    So are you saying that -- and let me go back to

14:26:52 17   what this --

14:26:53 18      A.    No.

14:26:53 19      Q.    First -- first quarter of 2011, there were 169

14:26:58 20   CSRs, customer service reps, in your center.  So you're

14:27:02 21   saying in this charge that of these 169 reps, you are

14:27:07 22   the only one doing outbound calls?

14:27:09 23      A.    In other words, we were all supposed to be

14:27:14 24   inbound officially January of 2011.

14:27:16 25      Q.    Uh-huh.

GUERIVACE SHELTON v. AT&T MOBILITY, LLC
Deposition of:  GUERIVACE SHELTON                    2/29/2012
197

| | | |
|---|---|---|
| 14:27:18 | 1 | A.   In January of 2011, I was pulled out -- I don't |
| 14:27:23 | 2 | know why I was pulled out -- to do outbound calls.  That |
| 14:27:27 | 3 | one outbound call -- because I said:  I thought we |
| 14:27:31 | 4 | wasn't supposed to do outbound calls after December the |
| 14:27:35 | 5 | 31st, 2010?  I was pulled out and I feel like I was |
| 14:27:43 | 6 | singled out because I was the only group, in other |
| 14:27:45 | 7 | words, Sherry Rea's group, required to do an outbound |
| 14:27:48 | 8 | call. |
| 14:27:50 | 9 | Q.   Okay.  So -- |
| 14:27:50 | 10 | A.   And that outbound call, I failed it, so I |
| 14:27:55 | 11 | failed for the month. |
| 14:27:56 | 12 | Q.   Let's talk about this further.  Again, my |
| 14:28:02 | 13 | question was:  After December 2010 -- |
| 14:28:05 | 14 | A.   December 2010? |
| 14:28:07 | 15 | Q.   Your sentence is this:  I was the only person |
| 14:28:11 | 16 | in inbound collections -- |
| 14:28:13 | 17 | A.   In my group. |
| 14:28:14 | 18 | Q.   Well, it doesn't say in your group. |
| 14:28:16 | 19 | A.   Well, that's what should have been stated |
| 14:28:18 | 20 | because we had a discussion about this. |
| 14:28:19 | 21 | Q.   So there were other employees? |
| 14:28:21 | 22 | A.   I don't know.  I don't know.  I don't know.  I |
| 14:28:24 | 23 | know what was in my group, and that's what I stated to |
| 14:28:26 | 24 | her.  I told her "in my group." |
| 14:28:28 | 25 | Q.   How do you know? |

U.S. LEGAL SUPPORT - DALLAS, TEXAS
214-741-6001

203