FORM NLRB-5268
(2-08)

| County of | Tarrant | ) | Case | 16-CA-27896 and |
|---|---|---|---|---|
| | | ) SS | | 16-CB-8278 |
| State of | Texas | ) | | |

## Confidential Witness Affidavit

I <u>Guerivace Shelton</u>, being first duly sworn upon my oath, hereby state as follows:

**I have been given assurances by an agent of the National Labor Relations Board that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the Board and will not be disclosed unless it becomes necessary to produce the Confidential Witness Affidavit in connection with a formal proceeding.**

I reside at 6746 Keswick Drive; Dallas, TX 75232. My telephone number is (214) 926-2806.

I have been employed by AT&T Mobility located at 1801 Valley View Lane; Farmers Branch, Texas as a customer service representative since September 2008 (I am currently in inbound collections). I currently work about 40 hours per week for about $14.53 per hour. My supervisor is Sherry Rea, Manager.

1   AT&T Mobility communicates regularly with employees through e-mail or an Intranet. They send
2   notices and policy changes by email. They say they post information on the intranet, but it's hard to find
3   it. They have some bulletin boards at the Valley View Lane facility where they post information for
4   employees, but I do not know how many.

5   I have been a member of the Communication Workers of America, Local 6215 since about
6   September 2008. I have not held or run for Union office. I have not filed grievances other than the one at
7   issue in the instant charge.

8   The CWA, Local 6215 communicate regularly with employees through bulk e-mail on our
9   personal email addresses and they have sent me emails to my work email account about meeting with
10  me about my grievance. They have about some bulletin boards at the Valley View Lane facility where
11  they post information for employees but I do not know how many.



DEFENDANT'S EXHIBIT 34

Page 1

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (December 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further an unfair labor practice or representation case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

204

FORM NLRB-5168
(2-08)

1   On or about December 2008, I heard Sherry Hardman, manager, talk to Leticia Beckworth,
2   customer service rep (we were hired on the same day), about how since she had a degree she was going
3   to give Leticia a raise (I found out in December 2010 from Leticia that it was a $0.50 per hour raise, she
4   no longer works there, she did not tell me when her raise took effect). I didn't think they could do that
5   because I was told by the trainer when I was hired in September 2008, that once you're hired you can't go
6   back and renegotiate your contract and you couldn't get a raise unless you got a promotion or had extra
7   work or in accordance with the scale that gives you an automatic raise every six months until we top off.

8   Between December 2008 and February 2010, I didn't see anything on the payroll about my being
9   due a raise. I did receive my regular 6 month raises on time. I knew that Leticia got a raise because in
10  February 2010 something changed on my check. Leticia and I were hired on the same day in the same
11  job category. I worked in payroll for another company and it would automatically flag the other person's
12  check if a change was made to someone else's check that was in the same category and hired on the
13  same date.

14  On or about February 2010, I noticed that it said on my paycheck that I was due a raise. At the
15  bottom of my checks between February 2010 and April 2010 it said "This pay period includes a pay rate
16  change – the most current hourly rate is shown above." I told my manager and she said she thought
17  there was a mistake and told me to wait and see if it stopped printing out that I was due a raise (in
18  addition to the regular 6 month raise). It stopped in May 2010 when I tried to access my check and was
19  unable to. On the last April 2010 check the phrase didn't show up on my check, but it was on the next
20  two in May 2010. After that it stopped again. I never got an additional raise besides the regular 6 month
21  raises.

22  On or about March or April 2010, my manager sent me to Lynn Whelldon, her manager. I sent
23  her an email about it but she never responded. On or about April 2010, after I told her that Lynn didn't
24  respond so my manager sent me to the payroll person, (first name unknown) Smitts, she said I got all my
25  raises. I told her that there was a raise on the floor with Leticia Beckworth. She asked how I knew that. I

Page 2

**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (December 13, 2008). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further an unfair labor practice or representation case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

205

FORM NLRB-5168
(2-08)

1   said that I saw her get it. She didn't say anything to me about that. I also talked to her about how it was
2   deleted in the system that I had requested May 28, 2010, to be off.

3   On or about July 3, 2010, I called the Employer's hotline (I do not know who I talked to) and told
4   them someone in payroll had just sent me an email from a general address about a schedule change for
5   me that said I was a no show on July 5, 2010 when I was supposed to be off. I told them about not
6   getting a raise like Leticia and that I wanted them to stop the harassment. I gave them my name and got
7   a case number from the person I talked to (report number 114097314).

8   No supervisors or managers said anything to me about the call.

9   On or about early July 2010, KJ Johnson, personnel, contacted my manager first about the
10  schedule change and the raise.

11  I kept complaining to my manager about my raise and about the day in May that was deleted from
12  the system (I had gotten a write up for not coming in, but I told her that I already had it in the system and
13  someone deleted it) and the day in July 2010.

14  On or about July 2010, KJ called me and told me to get off the clock and take her call in Rae's
15  office. I told her the same things I had been telling my manager and how someone had gone into the
16  system using my number to change my day off. She said she would look into it and see what she could
17  do to straighten out the situation.

18  After that I received my July 3, 2010 pay (I had already received the pay from May).

19  I received a list of questions from KJ on July 19, 2010, I responded to her questions on August 9,
20  2010.

21  On or about August 17, 2010, Rae called me into a meeting with Annjeanetta Hampton, payroll,
22  and KJ Johnson in one of the training rooms. When I went to the meeting, I thought we were going to talk
23  about shift bids because Annjeanetta and my manager told me that was what the meeting was going to
24  be about. But we never talked about the shift bids, they wanted to talk about someone going into the
25  system to change my days off. Annjeanetta said I was accusing her employees of going into the system

Page 3

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (December 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further an unfair labor practice or representation case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

206

FORM NLRB-5168
(2-08)

1   and changing information. I said I'm not accusing anyone, but what I was seeing on my printouts was
2   that Johnny Griffin, payroll, was changing things in my record. My CWA rep, Steve Donahoo, was also at
3   the meeting (the Employer invited him). KJ told me to file a grievance with the CWA.
4   After we left the meeting Donahoo gave me the form to fill out what I wanted to file the grievance
5   about a week later because he didn't have the form that day.
6   On or about August 27, 2010, I turned in the grievance form to Donahoo at work. He told me they
7   were backed up with cases and they would get with me within 90 days.
8   I waited 90 days, but no one met with me during that time.
9   I called the CWA office sometime between August and October 2010, I cannot recall who I talked
10  to, but I told him that I felt that I was being harassed and wanted it to stop. In May, June and July, 2010, I
11  did not meet my stats because I was going through this ordeal. He told me to stop printing documents
12  because it was the property of AT&T. I told him if it was not related to me I didn't print it out.
13  On or about October 4, 2010, I received a letter at home from CWA Treasurer Ted Levee to
14  Steve Dryden, Employer manager stating that the Union needed to meet with him on my grievance.
15  On or about January 2011, Shirley Anthony, CWA steward, walked up to me and told we were
16  meeting today. I went to my manager because I didn't see anything in my IEX (shows our schedules).
17  She said since it wasn't IEX the day before there was nothing saying that I should go. I sent an email to
18  Shirley or Steve that we should reschedule for a later date because I didn't see anything in my IEX. One
19  of the other CWA reps (I cannot recall who) walked up to my desk and said the meeting was going to be
20  today. I asked if they had told my manager because there was nothing in my IEX. She went to my
21  manager and said they wanted to talk to me. I walked over there too and my manager said to go ahead
22  to the meeting.
23  I went to the meeting in Smitt's office. Smitt's, Donahoo, another CWA rep that I had never seen
24  before, Shirley Anthony, and the CWA rep that came and got me. They started talking among each other
25  and no one was talking to me. Anthony told me they have been looking into it but they have a lot of

Page 4

**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (December 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further an unfair labor practice or representation case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

207

FORM NLRB-5168
(2-08)

1   cases. She told me that they hadn't heard from Dryden yet about setting up a meeting. Smitt's said they
2   looked through everything and didn't see where you didn't get a raise. I said Leticia got a raise on the
3   floor in 2008 but it didn't print out until 2010. Smitt's said they gave the raise to her because she had a
4   bachelor's degree. I told Anthony and Smitt's that they've already discussed this and I would only
5   respond to them if they gave me something in writing. I got up and left the meeting then.

6   I have not heard from the Union and I have not tried to contact them.

7   On or about January 2011, I filed a complaint with the EEOC about age discrimination regarding
8   the raise. On or about the same day, I received a right to sue letter from them. A few weeks later I filed a
9   formal complaint with them. No supervisors or managers said anything to me about the EEOC complaint
10  I made but they should know about it by now because the EEOC sent them a right to sue letter.

11  I do not know where my grievance is currently. No supervisors or managers have said anything
12  to me about the grievance.

13  I believe the Employer has discriminated against me by failing to give me raise since 2008 when
14  Leticia got her raise. I believe the Employer did not give me a raise because I saw them giving the raise
15  to Leticia and I told them about it up front in February 2010.

16  I am not aware of anyone else given a raise on the floor. I don't think anyone else was hired the
17  same day as Leticia and I in our category.

18  I believe the Union has failed to represent me by not responding to me concerning my issue.
19  They have not given me anything in writing except the letter to Dryden from Levee. I believe their motive
20  was that they don't want anyone to know that they are allowing raises to be given on the floor. They don't
21  want to address the issue.

22  I was hired in September 2008, and after the first shift bid, I got Monday through Friday with
23  Saturday off. There are people with more seniority that can't get Saturday off. I don't know why the
24  Employer is doing that. A lot of other agents were upset with me about it. In early to mid 2010 when I
25  was addressing my raise issue, I told Annjeanetta Hampton, in payroll and does shift bids, about the shift

Page 5

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (December 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further an unfair labor practice or representation case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

208

FORM NLRB-5168
(. 08)

1  bid in 2008. She said that was then and this is now. I said now I was getting bad shift bids and feel like
2  the other ones. It is supposed to be done strictly by seniority but they are splitting us up between inbound
3  and outbound and then figuring the seniority. We are assigned to one or the other, but they make us do
4  both and credit and activation when they need us to. I was reprimanded in January 2011 for failing an
5  outbound call. I took the payment like I was supposed to do, but they said I should have said more to the
6  customer. I was not supposed to be doing outbound calls after December 2010 based on an agreement
7  with the Union and the Employer (because we were having to do 3 jobs and only getting paid for one and
8  we were the only location doing that), but I got an outbound call in January 2011. I do not know why I had
9  that call. I have not had any more outbound or credit and activation calls since January 2011. I did not
10 talk to the Union about the outbound calls in January 2011 because they didn't handle my raise situation.
11 They didn't pay us when we were going 3 different jobs, the Union should have stepped in. I did not talk
12 to the Union about it because they didn't handle my other grievance.

**I am being provided a copy of this Confidential Witness Affidavit for my review. If, after reviewing this affidavit again I remember anything else that is relevant, or desire to make any changes, I will immediately notify the Board agent. I understand that this affidavit is a confidential law enforcement record and should not be shown to any person other than my attorney or other person representing me in this proceeding.**

**I have read this statement consisting of 6 pages, including this page, I fully understand its contents, and I certify that it is true and correct to the best of my knowledge and belief.**

*/s/ Lurwace Shelton*

Subscribed and sworn to before me at

Fort Worth, Texas

This 10th day of March, 2011.

_____
Board Agent,
National Labor Relations Board

**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (December 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further an unfair labor practice or representation case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

209