**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GUERIVACE SHELTON** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **NO. 3:11-CV-0991-K-BH** |
| | § | |
| **AT&T MOBILITY, COMMUNICATIONS** | § | |
| **WORKERS OF AMERICA, LOCAL 6215** | § | |
| | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge** |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this pro se case was automatically referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *Defendant AT&T Mobility's Motion for Summary Judgment*, filed August 8, 2012 (doc. 60), and *Defendant Communications Workers of America, Local 6215's Motion for Summary Judgment*, filed August 10, 2012 (doc. 63). Based on the relevant filings and applicable law, the motions for summary judgment should be **GRANTED**.

## I. BACKGROUND

Guerivace Shelton (Plaintiff) sues AT&T Mobility (AT&T) and Communications Workers of America, Local 6215 (CWA) (collectively Defendants) for discrimination and retaliation under the Age Discrimination in Employment Act of 1967 (ADEA) and for violations of §§ 7-9 the National Labor Relations Act (NLRA), 29 U.S.C. §§157-159; 29 U.S.C. § 621 et seq. (*See* docs. 2; 7; 24.)

AT&T hired Plaintiff as a customer service representative at its location in Farmers Branch,

Texas, on September 22, 2008.  (Doc. 62-2 at 1.)[1]  Her job duty was to handle customer calls and

to collect overdue bills or help customers establish payment plans on overdue accounts.  (*Id*. at 2.)

CWA represents the employees at AT&T's Farmers Branch location.  (*Id*.)  Plaintiff's job

is covered by a collective bargaining agreement (CBA) that includes provisions governing seniority,

work hours, work assignments, nondiscrimination, compensation, absence, and vacation time.  (*Id*.

at 6-26.)  With regard to pay, the CBA provides:

> Starting Rates: Each employee who enters the service of the Company shall begin
> employment at the  Start Rate for the appropriate job title, except that appropriate
> allowance over such starting rate may be made by the Company for an employee
> who has had previous experience or training considered to be of value.

(*Id*. at 20.)  The CBA also sets out a two-step grievance procedure to be followed by arbitration,

should CWA invoke the arbitration process within the time set out in the CBA.  (*Id*. at 10-13.)

On August 17, 2009, AT&T provided Plaintiff with a written counseling notice based on her

failure to achieve satisfactory call quality for the months of February, March, May, June and July

2009.[2]  (*Id*. at 36-37.)  The counseling notice provided Plaintiff an action plan and notice that her

performance was to be monitored through November 17, 2009.  (*Id*.)

On September 15, 2009, AT&T issued Plaintiff a written warning based on her failure to

meet her performance goals for call quality in August 2009.  (*Id*.  at 38-39.)  The warning provided

that Plaintiff would continue with her action plan and that her performance was to be monitored

through January 15, 2010.  (*Id*.)

---

[1]  Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]  There were also issues with Plaintiff's "PAR" performance, defined by an AT&T employee as "average handle time and adherence."  (Docs. 62-2 at 36-37; 65-16 at 13.)

Around December 2009,[3] Plaintiff learned that Latisha Beckworth (Beckworth), another employee with the same hire date, received a higher starting salary than Plaintiff. (Doc. 62-14 at 1.) Plaintiff characterized the difference in pay as an "on the floor" raise in her EEOC charge. (Doc. 62-14 at 1.) AT&T submitted evidence showing that Beckworth did not receive an "on the floor" raise, although it did concede that her initial salary was higher than Plaintiff's. (Doc. 62-3 at 1-7.) Plaintiff raised the issue with her supervisor, Sherry Rea, in April 2010. (Doc. 62-4 at 1.) Plaintiff subsequently disputed the accuracy of her routine pay increases as reflected on her pay stubs. (*Id.*) AT&T investigated Plaintiff's complaints and found that any discrepancy in starting wages between Plaintiff and Beckworth was the result of differences in qualifications, and that Plaintiff had received every scheduled wage increase to which she was entitled under the CBA. (Docs. 62-2 at 2; 62-3 at 5-7; 64-4 at 1-2.) Beckworth had a bachelor's degree while Plaintiff only held an associates degree, and Beckworth had two years of recent customer service experience while Plaintiff's relevant experience was more than a decade prior to her hire. (Doc. 62-3 at 1-2.)

On July 3, 2010, Plaintiff called AT&T's ethics hotline and complained about not receiving a pay raise and about the way her vacation requests had been handled. (Doc. 62-7 at 2.)

On August 27, 2010, CWA filed a grievance on Plaintiff's behalf regarding the pay raise issue.[4] (Doc. 65-14 at 2.) On October 4, 2010, CWA requested a hearing to resolve Plaintiff's complaint. (Docs. 62-16 at 14; 65-6 at 1.) CWA conducted several meetings with Plaintiff's

---

[3] Plaintiff's EEOC charge gives December 2009 as the date she learned of the pay disparity; however, other EEOC documents and Plaintiff's deposition testimony suggest Plaintiff knew of the salary disparity as early as December 2008. (Docs. 62-9 at 5; 62-11 at 4-5, 8; 64-14 at 1.) Here, the facts are stated in the light most favorable to Plaintiff.

[4] The issue of Beckworth receiving a higher starting salary was not raised in either the grievance or the grievance hearing. (Doc. 62-2 at 3.)

supervisor, Sherry Rea, job steward Steve Donahoo, and attendance manager Anjeanetta Hampton. (Doc. 65-14 at 2, 7-8.)  On January 21, 2011, a final grievance hearing took place with Plaintiff, CWA agent Shirley Anthony and various AT&T employees in attendance.  (*Id*. at 7-8.)  During the hearing, company officials explained that an investigation revealed that Plaintiff's complaint lacked support, and that she had received all the pay raises to which she was entitled.  (Doc. 62-2 at 3.)  AT&T provided CWA with information refuting Plaintiff's complaints.  (Doc. 65-14 at 2, 4-6.)  Shortly after the hearing began, Plaintiff left abruptly.[5]  (Docs. 62-2 at 3; 65-14 at 7.)

On February 17, 2011, Plaintiff filed an EEOC complaint against AT&T, alleging discrimination on the basis of age with regard to her pay and retaliation with respect to payment for overtime, and regarding her work shifts, vacation schedule, and work assignments.[6]  (Doc. 62-14 at 1.)  The EEOC dismissed her charge on the same day, finding that Plaintiff had not established an ADEA violation.  (Doc. 62-16 at 2.)

On February 24, 2011, Plaintiff filed separate charges with the National Labor Relations Board (NLRB) against AT&T and CWA.  (Doc. 62-16 at 3, 7.)  Her complaint against AT&T alleged unfair labor practices relating to her pay and her application for short-term disability,[7] failure to pay her for a vacation day, and a change in shift from the one she preferred.  (*Id*. at 8.)  Her complaint against CWA alleged a failure to represent her in connection with her pay grievance.  (*Id*. at 4.)

---

[5] The record is unclear regarding whether the hearing continued despite Plaintiff's departure, or concluded at that point.

[6] Plaintiff complained that she was the only employee assigned to in-bound collections who had to handle out-bound calls after December 2010.  (Doc. 62-14.)

[7] Plaintiff admits that she was not entitled to short-term disability pay.  (Doc. 62-11 at 15-17.)  Moreover, she did not raise the issue in any of her EEOC charges.  (Docs. 62-14 at 1; 62-15 at 1; 65-5 at 4.)

On March 8, 2011, AT&T denied Plaintiff's pay grievance, and CWA did not appeal the decision. (Docs. 62-2 at 3, 35; 65-14 at 7.)

On April 7, 2011, AT&T provided Plaintiff with a written counseling notice based on her failure to achieve satisfactory call quality and post-call surveys during February and March 2011. (Doc. 62-4 at 2, 4-5, 30.) The counseling notice provided Plaintiff an action plan and notice that her performance was to be monitored through July 7, 2011. (*Id*. at 4-5.)

On April 20, 2011, Plaintiff filed a second NLRB charge against AT&T; she alleged that it discriminated against her with regard to her quarterly shift bids in October 2010 and January 2011 because of her August 2010 pay grievance. (Doc. 62-16 at 26-27.)

On April 25, 2011, the NLRB issued its findings on the February 24, 2011 charges against AT&T and CWA. (*Id*. at 4-6, 8-10.) The NLRB found no evidence that AT&T's alleged conduct was motivated by Plaintiff's union activity or that it discriminated against her for filing a grievance or engaging in other union activity. (*Id*. at 8-10.) It also found that the practices about which Plaintiff complained occurred more than six months before she filed her charge. (*Id*.) With regard to CWA, the NLRB concluded there was no evidence to establish that CWA failed to represent her in her grievance over her pay or that any of its actions amounted to more than negligence. (*Id*. at 4-6.) The NLRB refused to issue a complaint as to either of Plaintiff's charges. (*Id*. at 4-6, 8-10.) Plaintiff appealed both findings, and the NLRB denied both appeals for the reasons stated in its initial decisions. (*Id*. at 11-13, 24-25.)

On May 10, 2011, AT&T issued Plaintiff a written warning based on her failure to meet her performance goals for call quality in April 2011. (Doc. 62-4 at 2, 6, 30.) The warning provided that Plaintiff was to continue with her action plan and that her performance was to be monitored through

September 10, 2011.  (*Id*.)

Plaintiff's call quality and post-call survey scores were also unsatisfactory in May 2011.  (*Id*. at 2, 7-8, 30.)  AT&T issued a final written warning on June 14, 2011.  (*Id*.)  It provided that Plaintiff was to continue with her action plan, and her performance was to be monitored through December 14, 2011.  (*Id*. at 7-8.)  AT&T also provided Plaintiff with a counseling notice on June 14, 2011, for allegedly disruptive behavior during training sessions on June 7-8, 2011.  (Doc. 62-2 at 40-41.)  The counseling notice set out an action plan for improving Plaintiff's conduct and notified her that her performance was to be monitored through September 14, 2011.  (*Id*.)

On June 20, 2011, the NLRB issued a decision on Plaintiff's April 20, 2011 charge against AT&T.  (Doc. 62-16 at 27-28.)  The NLRB found that AT&T awarded Plaintiff's shifts based on her seniority and stated preferences, and that there was no evidence showing that AT&T discriminated against her with regard to her shift bids as a result of her August 2010 pay grievance. (*Id*.)  Plaintiff appealed the decision.  (*Id*. at 30-31.)  The NLRB denied her appeal.  (*Id*. at 41.)

Plaintiff's call quality scores for June and July were also below target, and AT&T discharged her on July 11, 2011.  (Docs. 62-4 at 30; 62-15 at 1.)

On July 12, 2011, Plaintiff filed an EEOC charge against A&T, alleging age discrimination and retaliation based on the disciplinary warnings and her termination. (Doc. 62-15 at 1.)

CWA filed a grievance over Plaintiff's dismissal on July 22, 2011.  (Doc. 62-2 at 5, 42.) AT&T denied the grievance on September 8, 2011.  (Doc. 62-2 at 43.)  CWA appealed the grievance to the general level, and on January 27, 2012, AT&T denied the appeal.  (Docs. 62-2 at 44; 65-16 at 17.)  CWA decided not to recommend Plaintiff's discharge grievance for arbitration.  (Doc. 62-16 at 43.)

Plaintiff filed suit against Defendants on May 11, 2011, alleging age discrimination with regard to her pay and retaliation based on the ADEA. (*See* doc. 2.) On May 25, 2011, she amended her complaint, adding claims that Defendants violated §§ 7-9 of the NLRA. (*See* doc. 7.) Plaintiff amended her complaint again on September 14, 2011, and added a claim for retaliatory discharge. (*See* doc. 24.)

On July 13, 2012, Plaintiff filed an EEOC charge against CWA, alleging age discrimination and retaliation based on the disciplinary warnings and her termination. (Doc. 65-5 at 4.)

Defendants now move for summary judgment. (*See* docs. 60; 63.) The motions have been fully briefed and are ripe for decision.

## II. OBJECTIONS

AT&T objects to Plaintiff's response on grounds that her statements are unsworn and consist of unsupported conclusions and subjective beliefs, and are therefore not competent summary judgment evidence. (Doc. 69 at 6-8.) Both Defendants object to Plaintiff's response on grounds that she has failed to identify specific evidence and to articulate the manner in which the evidence supports her claims. (Docs. 69 at 7; 70 at 5.) Plaintiff did not respond to Defendant's objections.

An affidavit opposing a motion for summary judgment must be sworn in order "to raise a fact issue precluding summary judgment." *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). An unsworn declaration may substitute for an affiant's oath if it is made "under penalty of perjury" and is "verified as true and correct." *See id.* (citing 28 U.S.C. § 1746); *accord Washington v. Moore*, No. 92-1430, 1993 WL 117975, at *1 (5th Cir. Mar. 30, 1993). Attorneys and *pro se* litigants alike must strictly comply with the requirement of sworn statements, and courts should require correction of any deficiencies in supporting papers that they intend to rely

on. *See Gordon v. Watson*, 622 F.2d 120, 123 (1980) (per curiam); *accord Brady v. Blue Cross and Blue Shield of Texas, Inc.*, 767 F. Supp. 131, 135 (N.D. Tex. 1991).

An affidavit is defined as a "statement in writing of a fact or facts signed by the party making it, *sworn to before an officer authorized to administer oaths, and officially certified to by such officer under his seal of office*." *Blanco, Inc. v. Porras*, 897 F.2d 788, 792 (5th Cir. 1990) (emphasis added); *see also Wavefront Technology Solutions, Inc. v. Morton*, No. H-11-383, 2012 WL 2846868, at *5 (S.D. Tex. May 2, 2012) (internal citations and quotation marks omitted), *adopted by* 2012 WL 2842269 (July 10, 2012). The officer's official certification is a jurat. *McCreary v. Director, TDCJ-CID*, No. 6:11-CV-282, 2012 WL 718616, at *3 (E.D. Tex. Mar. 5, 2012). Plaintiff's response includes a preliminary "Summary" that begins with the following: "I Guerivace Shelton, being fist [sic] duly sworn upon my oath . . . ." (Doc. 68 at 2.) However, neither the summary nor her response includes the required jurat, and neither are made under penalty of perjury or verified as true and correct. (Doc. 68 at 8-26.) Since her statements are unsworn, they may not be construed as affidavits or other competent summary judgment evidence, so AT&T's objection to these materials is **SUSTAINED.**[8]

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material."

---

[8]  Even if the Court were to consider her summary and response to the undisputed facts, it would not affect the disposition of Defendants' motions. Her summary and response are replete with unsubstantiated assertions and conclusory statements. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (conclusory allegations and unsubstantiated assertions do not satisfy a nonmovant's burden of demonstrating a material issue of fact); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In a case in which "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455,

458 (5th Cir. 1998). "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (per curiam) (citing Fed. R. Civ. P. 56(c)(1)).

## IV. ADEA CLAIMS

Defendants move for summary judgment on Plaintiff's ADEA claims. (*See* docs. 61 at 6, 18; 64 at 5, 9-11.)

### A. CWA

CWA contends that summary judgment is proper because Plaintiff's ADEA claims against it are time-barred. (Doc. 64 at 9-10).

A prerequisite to a claim under the ADEA is the filing of an administrative charge with the EEOC. 29 U.S.C. § 626(d); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992). In a "deferral state" like Texas, the charge must be filed within 300 days of the alleged unlawful act. *Martin v. Lennox Int'l Inc.*, 342 Fed. App'x 15, 18 (5th Cir. 2009) (per curiam); *Conaway*, 955 F.2d at 362. Timely filing of an EEOC complaint is not a jurisdictional requirement; the limitations period is subject to estoppel and equitable tolling. *Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 393 (1982). A plaintiff who does not file a charge within 300 days bears the burden of showing a factual basis for tolling the limitations period. *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988). The limitations period begins to run when the plaintiff receives notice of the allegedly discriminatory action. *Conaway*, 955 F.2d at 362 (citing *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 810 (5th Cir. 1991).

To meet its summary judgment burden, CWA points to evidence that Plaintiff named CWA in only one of her three EEOC charges–the one filed July 13, 2012.[9] (Doc. 65-5 at 4.) Her charge complains of the written disciplinary warnings she received in 2011 and her July 11, 2011 discharge. (*Id.*) Her termination is the most recent incident mentioned in the charge. Plaintiff filed her EEOC charge against CWA 368 days after Plaintiff's termination–well beyond the applicable 300 day limitations period. This evidence is sufficient to meet CWA's initial summary judgment burden.

The burden now shifts to Plaintiff to point to admissible evidence that demonstrates a genuine factual dispute as to when she had notice of CWA's allegedly discriminatory conduct. Plaintiff has not done so. Because CWA has proven that Plaintiff's EEOC charge was not timely filed and Plaintiff has not come forward with evidence that would support tolling the limitations period, CWA is entitled to summary judgment with regard to Plaintiff's ADEA claims. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324; *Blumberg*, 848 F.2d at 644.

**B.    AT&T**

AT&T moves for summary judgment on Plaintiff's age discrimination and retaliation claims. (Doc. 61 at 18-25.)

**1.    Discrimination**

AT&T asserts that it is entitled to summary judgment with regard to Plaintiff's discrimination claim because she cannot establish a *prima facie* case. (*Id.* at 19-20.) AT&T further contends that even if Plaintiff could make out a *prima facie* case, it had a legitimate non-discriminatory reason for its action and Plaintiff cannot show a genuine factual dispute as to the

_____

[9] Plaintiff filed two other charges, one on February 17, 2011 and another on July 12, 2011. (*See* docs. 62-14 at 1; 62-15 at 1.) Both named AT&T as the party responsible for the alleged discrimination and retaliation. (*Id.*)

issue of pretext.  (*Id.* at 20.)

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "A plaintiff may prove age discrimination through either direct or circumstantial evidence."  *See Joseph v. City of Dallas*, 277 F. App'x 436, 439 (5th Cir. 2008) (per curiam) (citing *Sanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009) (plaintiff must prove by a preponderance of the evidence, either direct or circumstantial, that age was the "but-for" cause of the challenged employment decision).

Where a plaintiff offers circumstantial evidence of discrimination, her age discrimination claim is subject to the familiar *McDonnell Douglas* burden-shifting framework.  *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (while the Supreme Court has not definitely resolved whether the *McDonnell Douglas* framework applies to ADEA claims, "we are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.").  Under the framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).  To establish a *prima facie* case of age discrimination, a plaintiff must show that (1) she was within the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and (4) she was replaced by someone younger or treated less favorably than similarly situated younger employees.  *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003).  If the plaintiff establishes a *prima facie* case, "the burden shifts to the

employer to provide a legitimate, non-discriminatory reason for the employment decision." *Moss*, 610 F.3d at 922 (citing *Berquist*, 500 F.3d at 349). If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the burden shifts back to the employee "to show that the reason given is merely pretextual." *Id*. (citing *Jackson*, 602 F.3d at 378-79).

### a.   *Prima Facie* Case

AT&T argues that Plaintiff cannot prove the final element of her *prima facie* case, i.e., that she was treated less favorably than similarly-situated younger employees. (Doc. 61 at 19-20.) To meet its summary judgment burden, AT&T points to Plaintiff's admission in her deposition testimony that she does not know Beckworth's age as evidence that Plaintiff cannot prove that the employee she claims is similarly situated to her is under the age of forty. (Doc. 62-11 at 4, 37.) By pointing out an absence of evidence to support Plaintiff's claim, AT&T has met its summary judgment burden. *See Celotox*, 477 U.S. at 325 (the movant may discharge its burden by pointing out the absence of evidence to support an element of the non-movant's case); *Turner v. N. Am. Rubber, Inc.*, 979 F.2d 55, 58-59 (5th Cir. 1992) ("Proof that one's replacement is less than forty years old is necessary to establish a prima facie case . . . ."); *see also Smith*, 351 F.3d at 196 (explaining final element of *prima facie* case as requiring proof that the plaintiff suffered from disparate treatment *because* of membership in the protected class).

The burden now shifts to Plaintiff to point to admissible evidence that demonstrates a genuine factual dispute as to whether a similarly situated *younger* employee was treated more favorably than Plaintiff. Although Plaintiff testified in her deposition that Beckworth was younger, she admitted she was unsure of her age, and that she did not know if Beckworth was over forty years old. (Doc. 62-11 at 4, 37.) Her response asserts, alternatively, that Beckworth is 9 years younger,

15 years younger, or 19 years younger than Plaintiff. (Docs. 67 at 3; 68 at 2, 4, 26.) However, because Plaintiff's statements are unsworn, they are nothing more than unsubstantiated assertions. *See Little*, 37 F.3d at 1075 (conclusory allegations and unsubstantiated assertions do not satisfy a nonmovant's burden of demonstrating a material issue of fact); *see also Topalian*, 954 F.2d at 1131. Plaintiff has not adduced sufficient evidence to create a genuine issue of material fact on the final element of her *prima facie* case. *See Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324.

### b. Legitimate Non-Discriminatory Reason

Even assuming for purposes of this motion only that Plaintiff established a genuine material fact issue with respect to her *prima facie* case, AT&T offered evidence showing that it had a legitimate non-discriminatory reason for any adverse action. AT&T considered Beckworth's bachelor's degree and recent relevant work experience in setting her starting salary. (Doc. 62-3 at 1-2.) It also offered evidence that the CBA authorized it to award a higher starting salary to an employee with valuable training or experience. (*Id*.) The Fifth Circuit has noted that an employer's proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *See Bodenheimer v. PPG Indus. Inc*, 5 F.3d 955, 958 (5th Cir. 1993). Since AT&T has met its summary judgment burden, Plaintiff now has the burden to raise a genuine material fact issue by showing that the proffered reason is a pretext for discrimination.

### c. Pretext

"A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378-79 (citations and internal quotation marks omitted). The plaintiff must produce evidence from which a rational fact-finder could conclude that her age was the "but-for" cause of the challenged

employer decision. *Gross*, 557 U.S. at 177. Here, Plaintiff has failed to produce such evidence. Plaintiff's response to the undisputed facts is not sworn, and is therefore inadmissible. (Doc. 68 at 8-26.) Her EEOC charge contained no specific facts to refute AT&T's showing. (*Id*. at 30.) Her interrogatory responses offer no specific facts to show that the reason offered by AT&T was false or unworthy of belief. (*Id*. at 51-65.) Finally, her deposition testimony is not probative on the matter of pretext. (*Id*. at 67-100.) Since Plaintiff has failed to meet her ultimate burden of raising a genuine material fact issue that AT&T's proffered explanation was mere pretext, summary judgment should be granted in favor of AT&T on her age discrimination claim. *See Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324.

####    2.    Retaliation

AT&T also moves for summary judgment on Plaintiff's retaliation claim on grounds that she cannot establish a *prima facie* case. (Doc. 61 at 21-25.) It contends that Plaintiff's complaint as to overtime pay is moot, and her complaints regarding her shift and vacation schedules, her work assignment and the disciplinary warnings she received do not rise to the level of an adverse action. (*Id*. at 21-24.) Finally, AT&T asserts that it had a legitimate non-discriminatory reason for discharging Plaintiff, and she cannot demonstrate a genuine material fact issue as to pretext. (*Id*. at 24-25.)

Retaliation claims under the ADEA are analyzed under the same well established burden-shifting paradigm as Title VII retaliation claims. *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). To establish a *prima facie* case of retaliation, a plaintiff must show that: "(1) [s]he engaged in an activity protected by . . . the ADEA; (2) [s]he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Kebiro v.*

*Walmart*, 193 F. App'x 365, 368 (5th Cir. 2006) (per curiam) (citing *Long v. Eastfield Coll.*, 88 F.3d

300, 304 (5th Cir. 1996)).  Once the plaintiff establishes a *prima facie* case of retaliation, the burden

of production shifts to the defendant to proffer a non-retaliatory reason for its action.  *See id.*  If the

defendant meets its burden, the plaintiff must then offer sufficient evidence to create a genuine issue

of material fact that the defendant's reason is not true, but a pretext for retaliation.[10]  *Id.*

### a.    Overtime Pay/Shift and Vacation Schedules/Work Assignment

AT&T contends that summary judgment is proper as to Plaintiff's retaliation claim insofar

as it is based on her assertions regarding overtime pay, vacation pay, problems with her shift and

vacation schedules, and her assignment to handle out-bound calls.  (Doc. 61 at 21-23.)  It argues that

Plaintiff cannot satisfy the second element of her *prima facie* case because her complaints are moot

or fail as a matter of law to amount to actionable retaliatory conduct.  (*Id.*)

To be actionable, an employment action must be "materially adverse" to a reasonable

employee, which in the retaliation context "means it well might have dissuaded a reasonable worker

from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 68 (2006) (citations and internal quotation marks omitted).  The action must be

materially adverse in order "to separate significant from trivial harms."  *Id.*

To meet its summary judgment burden, AT&T points to Plaintiff's deposition testimony that

her overtime pay issue was resolved to her satisfaction as evidence that this complaint is moot.

(Doc. 62-11 at 48.)  It points out the lack of documentary evidence to establish that AT&T altered

her work or vacation schedule.  (Docs. 62-2 at 2; 62-4 at 2; 62-5 at 1.)  It offers evidence that

---

[10]   The Supreme Court recently held that the ADEA does not authorize a mixed-motive age discrimination
claim.  *See Gross,* 557 U.S. at 178.  The holding has been applied to preclude a mixed-motive ADEA retaliation
claim.  *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 445-56 (7th Cir. 2011) (under the ADEA, retaliation must be
a but-for cause of a materially adverse action, not merely a contributing factor).

Plaintiff's scheduling difficulties were the result of her failure to utilize the computer to select her work shifts and vacation time. (Doc. 62-5 at 1-2.) It also points to evidence that Plaintiff received payment for her vacation time. (Docs. 62-6 at 2; 62-7 at 2; 62-11 at 17-18.) In addition, AT&T points to evidence that Plaintiff was not the only employee assigned to in-bound collections who had to handle out-bound calls subsequent to December 2010. (Doc. 62-16 at 32.) This evidence is sufficient to meet AT&T's initial summary judgment burden.

The burden now shifts to Plaintiff to direct the Court's attention to evidence that creates a genuine issue of material fact as to whether she suffered an adverse employment action. She has not done so. Plaintiff's response to the undisputed facts is not sworn, and is therefore inadmissible. (Doc. 68 at 8-26.) Neither her interrogatory responses nor her deposition testimony create a genuine factual issue as to whether she suffered an adverse action. (*Id*. at 51-100.) Plaintiff has offered no admissible evidence that she was adversely affected by her assigned shift schedule. *See White*, 548 U.S. at 69 (noting that the impact of a schedule change differs from case to case). Moreover, although Plaintiff complained that her vacation schedule was altered, she admitted that she was permitted to take her vacation as planned and was paid for her vacation time. (Doc. 62-11 at 17-18, 25-27.) She has offered no evidence that any delay in receiving pay for the vacation time at issue amounted to more than a temporary inconvenience. (*Id*.) Finally, although Plaintiff's EEOC complaint states that having to handle outbound calls negatively impacted her inbound call numbers, and ultimately her pay, she offers no specific testimony or documentary evidence to support her position. (68 at 30.) Conclusory allegations and unsubstantiated assertions are insufficient to satisfy Plaintiff's summary judgment burden, *Little*, 37 F.3d at 1075; *Topalian*, 954 F.2d at 1131.

Plaintiff alleges only isolated incidents and minor annoyances that are insufficient to

dissuade a reasonable employee from making or supporting a discrimination charge. *See Aryain v. Wal-Mart Stores Texas LP,* 534 F.3d 473, 486 (5th Cir. 2008) (plaintiff's complaints about breaks and work schedule amounted to no more than "petty slights" or "minor annoyances"); *King v. Louisiana*, 294 Fed. App'x 77, 85-86 (5th Cir. 2008) (per curiam) (even taken in a light most favorable to plaintiff, allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment action for purposes of retaliation claim). AT&T's motion for summary judgment should be granted as to this aspect of Plaintiff's retaliation claim.

### b. Written Warnings

AT&T also asserts that summary judgment is proper because the written warnings it issued to Plaintiff in 2011 are not adverse employment actions. (Doc. 61 at 23-24.)

### i. *Prima Facie* Case

As noted, only those employment actions which are "materially adverse" are actionable. *White*, 548 U.S. at 68. In *Earle v. Aramark Corp.*, the Fifth Circuit held that an employer's alleged retaliatory conduct that included disciplinary write-ups did not rise to the level of a materially adverse employment action. 247 F. App'x 519, 524 (5th Cir. 2007) (per curiam); *see also Walker v New Beginning Ctr.*, No. 3:09-CV-925-M, 2010 WL 2403723, at *2 n. 17 (N.D. Tex. June 14, 2010). Plaintiff has not countered with any contrary authority. Because the written warnings Plaintiff received do not rise to the level of a materially adverse employment action, AT&T's motion for summary judgment should be granted as to this issue.

### ii. Legitimate Non-Discriminatory Reason

Even if there was a genuine material fact issue with respect to her *prima facie* case, AT&T

offered evidence showing that it had a legitimate non-discriminatory reason for any adverse action. AT&T offered evidence that the counseling notices and written warnings Plaintiff received were based on poor call-handling quality. (Docs. 62-2 at 4; 62-4 at 2-3.) Since AT&T has met its summary judgment burden, Plaintiff now has the burden to raise a genuine material fact issue by showing that the proffered reason is a pretext for retaliation.

### iii. Pretext

"A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378-79 (citations and internal quotation marks omitted). The plaintiff must produce evidence from which a rational fact-finder could conclude that retaliation was the "but-for" cause of the challenged employer decision. *Gross*, 557 U.S. at 177. Here, Plaintiff has failed to produce such evidence. Since she has failed to meet her burden of raising a genuine material fact issue that AT&T's proffered explanation was mere pretext, summary judgment should be granted in favor of AT&T on Plaintiff's retaliation claim based on the disciplinary warnings she received.

### c. Discharge

With regard to Plaintiff's discharge, AT&T contends that it had a legitimate non-discriminatory reason for firing Plaintiff, and that Plaintiff cannot show a triable issue of fact as to pretext. (Doc. 61 at 21-23.)

### i. Legitimate Reason

As noted previously, if the plaintiff satisfies the elements of a *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse action. To meet its burden, AT&T offered evidence that it discharged Plaintiff because of her poor job

performance and her continued inability to meet the performance objectives established by her supervisor. (Doc. 62-8 at 1.) As mentioned, an employer's proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *See Bodenheimer*, 5 F.3d at 958. Since AT&T has met its summary judgment burden, Plaintiff now has the burden to raise a genuine material fact issue by showing that the proffered reason is a pretext for retaliation.

## ii.  Pretext

Here, Plaintiff has failed to produced such evidence from which a rational fact-finder could conclude that the reasons proffered by AT&T for her discharge was a pretext, and that the real reason for her termination was retaliation. She admitted in her deposition that her scores for call-handling and post-call surveys were unsatisfactory. (Doc. 68 at 93.) She then went on to testify that "everybody" was failing to achieve the required threshold scores on call-handling and post-call surveys. (*Id*.) Finally, Plaintiff criticized the system for grading call-handling as subjective and testified that her post-call survey results did not reflect on her, but instead reflected how customers felt about AT&T. (*Id*. at 94-96.)

Plaintiff's evidence is not probative on the matter of pretext. Evidence that AT&T's reason for discharging Plaintiff was faulty is not the same as evidence demonstrating that the reason for her termination was false or unworthy of belief. *See Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 Fed. App'x 917, 924-25 (5th Cir. 2009) (per curiam) ("The plaintiff has not necessarily proven pretext by showing the facts underlying the employer's reason for the adverse employment action are factually incorrect."); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not

truly motivated by its proffered justification.") Since Plaintiff has failed to provide evidence of pretext, the Court should grant AT&T's motion for summary judgment with regard to her retaliatory discharge claim.

## V. NLRA CLAIMS

Defendants move for summary judgment on Plaintiff's NLRA claims. (*See* docs. 61 at 6, 18; 64 at 5, 9-11.)

### A. CWA

#### 1. NLRB - Exclusive Jurisdiction

CWA contends that it is entitled to summary judgment on Plaintiff's claims under §§ 7-9 of the NLRA because Plaintiff prosecuted her claim before the NLRB, and it found that CWA had not violated its duty of fair representation. (Doc. 64 at 12.)

Congress granted the NLRB "authority to administer, interpret and apply the NLRA and federal labor policy." *Offices at 2525 McKinnon, LLC v. Ornelas*, 681 F. Supp.2d 778, 783 (N.D. Tex. 2010) (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 242-43 (1959)). Where the complained of conduct is "arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245. *Garmon* applies to claims under § 9 as well. *See Hobbs v. Hawkins*, 968 F.2d 471, 476 (5th Cir. 1992) (citing *Local 926, Int'l Union of Operating Eng'rs, ALF-CIO v. Jones*, 460 U.S. 669, 676 (1983)). When a claim is preempted by *Garmon*, a plaintiff's cause of action lies within the jurisdiction of the NLRB, and not the courts. *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 393 (1986); *Garmon*; 359 U.S. at 244-45. However, "where the conduct is of only a

peripheral concern to the NLRA or touches interests deeply rooted in local feeling and responsibility," there is no preemption. *Poly-America, Inc. v. Union of Needletrades*, No. 3:97-CV-2010, 1998 WL 7145, at *1 (N.D. Tex. Jan. 7, 1998) (citing *Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53, 61-62 (1966)).

To meet its summary judgment burden, CWA points to Plaintiff's NLRB complaint, the NLRB's initial ruling and its decision to deny her appeal as evidence that Plaintiff's §§ 7-9 claims fall within the exclusive jurisdiction of the NLRB. (Docs. 65-11 at 1; 65-12 at 1-3; 65-13 at 1-2.) This evidence is sufficient to meet CWA's initial summary judgment burden.

The burden now shifts to Plaintiff to direct the Court's attention to evidence in the record raising a genuine issue of material fact as to whether her §§ 7-9 claims regarding her pay are properly before the Court. She has not done so. Plaintiff's NLRA claim is preempted, and the Court is without authority to disturb the agency's final decision. *Garmon*, 359 U.S. at 245; *Hobbs*, 968 F.2d at 476. CWA is entitled to summary judgment with regard to Plaintiff's claims under §§ 7-9 of the NLRA.

### 2.     Hybrid § 301 Claim

To the extent that the *pro se* Plaintiff's NLRA claims can be construed as a hybrid claim under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), CWA contends that summary judgment is proper on her claim for breach of the duty of fair representation because Plaintiff cannot meet her burden of proving that it acted in an arbitrary, discriminatory or bad faith manner. (Doc. 64 at 12.)

A hybrid claim under § 301 of the LMRA is one in which a plaintiff asserts a claim against the employer for breach of contract based on the collective bargaining agreement, and a claim

against the union for breach of the duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983); *Daigle v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 977 (5th Cir. 1986); *Ingram v. Kroger Co.*, No. 3:99-CV-0032-L, 2000 WL 730424, at *2 (N.D. Tex. May 17, 2000).

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.

*DelCostello*, 462 U.S. at 164. However, "the two claims are inextricably interdependent. 'To prevail against *either* the company or the Union . . . [the plaintiff] must not only show that [her] discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.'" *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976)) (emphasis added)).

To succeed on a claim for breach of the duty of fair representation, a plaintiff must demonstrate that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *see also Hart v. Nat'l Homes Corp.*, 668 F.2d 791, 793-94 (5th Cir. 1982). To do so, a plaintiff must go beyond a showing of mere negligence or mistaken judgment. *Landry v. The Cooper/T. Smith Stevedoring Co., Inc.*, 880 F.2d 846, 852 (5th Cir. 1989).

"[A] union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion . . . ." *Vaca*, 386 U.S. at 191. However, "[a]n employee has no absolute right to have [her] grievance taken to arbitration." *Landry*, 880 F.2d at 852 (citing *Vaca*, 386 U.S. at 191). A union's conduct is arbitrary only when "the union's behavior is so far outside a wide range of reasonableness" as to be irrational. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)

(quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). A union decision is nonarbitrary when it is: "(1) based upon relevant, permissible union factors which exclude[ ] the possibility of it being based upon motivations such as personal animosity or political favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees." *Nelson v. Sw. Bell Tel. Co.*, No. 3:98-CV-0405-R, 1999 WL 47250, at *5 (N.D. Tex. Jan. 22, 1999) (citing *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976)). A court's substantive review of the union's decision is highly deferential . . . ." *O'Neill*, 499 U.S. at 78.

To meet its summary judgment burden, CWA points to the NLRB's dismissal of Plaintiff's complaint based on its finding that there was no evidence that CWA unlawfully failed to represent her in her pay grievance, or that its actions extended beyond simple negligence.[11] (Doc. 62-16 at 4-6.) This evidence is sufficient to meet CWA's initial summary judgment burden. *See Smith v. Local 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d 741, 748 n. 4 (5th Cir. 1974) (recognizing NLRB findings sufficient to shift burden to plaintiff to demonstrate a genuine issue of material fact on its breach of fair representation claim); *see also Lindsey v. Prive Corp.*, 161 F.3d 886, 894 (5th Cir. 1998) (EEOC determination admissible summary judgment evidence).

The burden now shifts to Plaintiff to point to admissible evidence that demonstrates a genuine factual dispute regarding whether CWA's conduct was arbitrary, discriminatory or in bad faith. Plaintiff has not done so. Nothing in the record is indicative of personal animosity or political

---

[11] The pay grievance is the sole basis of Plaintiff's breach of duty of fair representation claim. She did not file a grievance with CWA concerning her shift schedules, vacation time, or disciplinary warnings. (Docs. 65-2 at 23; 65-16 at 7.) Moreover, she had not been discharged at the time she amended her complaint to add her NLRA claim on May 25, 2011. (*See* doc. 7.) Finally, her second amended complaint only added a claim of retaliatory discharge under the ADEA. (*See* doc. 24.)

favoritism. Instead, the only evidence before the Court establishes that CWA prosecuted Plaintiff's pay grievance in good faith; its decision not to pursue the grievance beyond the January 21, 2011 hearing was well within the bounds of its discretion based on the information AT&T provided to CWA during the grievance process. Because Plaintiff has not met her burden of showing that a reasonable trier of fact could find in her favor, CWA's motion for summary judgment should be granted as to Plaintiff's hybrid breach of contract claim under § 301.

## B.    AT&T

### 1.    NLRB - Exclusive Jurisdiction

AT&T moves for summary judgment on Plaintiff's claims under §§ 7-9 of the NLRA.[12] (Doc. 61 at 25-31.) It contends that Plaintiff's claims are preempted because they fall within the exclusive jurisdiction of the NLRB. (*Id*. at 25-26.)

As noted, the NLRB has exclusive jurisdiction over claims under §§ 7-9 of the NLRA. *Garmon*, 359 U.S. at 245; *Hobbs*, 968 F.2d at 476. To meet its summary judgment burden, AT&T points to Plaintiff's complaint, amended complaints and the CBA as evidence that her §§ 7-9 claims fall within the exclusive jurisdiction of the NLRB. (Docs. 2; 7; 24; 62-2 at 6-26.) Plaintiff's amended complaint specifically relies on §§ 7-9 of the NLRA. Her claims relate to matters of compensation which are subject to the CBA. This evidence is sufficient to meet AT&T's initial summary judgment burden.

The burden now shifts to Plaintiff to point to admissible evidence that demonstrates a genuine factual dispute as to whether her §§ 7-9 claims regarding her pay are preempted. Plaintiff

---

[12] Section 7 addresses employees' right to participate or abstain from participating in organized labor organizations. Section 8 proscribes certain unfair labor practices and mandates collective bargaining in specific circumstances. Section 9 governs representatives and elections. 29 U.S.C. §§ 157-159.

offered neither evidence nor authority to refute AT&T's motion with regard to this issue. As a result, those claims fall within the exclusive jurisdiction of the NLRB and are therefore preempted. AT&T is entitled to judgment as a matter of law with regard to Plaintiff's claims under §§ 7-9 of the NLRA.

### 2. Hybrid § 301 Claim Under the LMRA

To the extent that the *pro se* Plaintiff's NLRA claims can be construed as a hybrid claim under § 301 of the LMRA, AT&T contends that it is entitled to summary judgment because Plaintiff cannot meet her burden of proving that CWA breached its duty of fair representation. (Doc. 61 at 30-31.)

As noted, in order to succeed on a breach of contract claim against the employer in a hybrid action under § 301, a plaintiff must also prove that the union breached its duty of fair representation. *Mitchell*, 451 U.S. at 66-67; *Hines*, 424 U.S. at 570-71. The Court has already found that Plaintiff cannot meet her burden of showing a triable issue of fact with regard to whether CWA breached its duty of fair representation. As a result, her breach of contract claim against AT&T necessarily fails as well. AT&T is entitled to summary judgment on Plaintiff's hybrid § 301 claim.

## VI. RECOMMENDATION

Defendants' motions for summary judgment should be **GRANTED,** and Plaintiff's claims against them should be **DISMISSED with prejudice**.

**SO RECOMMENDED**, this 28th day of February, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE